UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CLEAN ENERGY CHOICE COALITION, NFP )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>VILLAGE OF OAK PARK, ILLINOIS, )<br>)<br>Defendant. ) | Case No. 1:25-cv-04353<br>Hon. Franklin U. Valderrama |

**PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1(b)(3)(C), Plaintiff Clean Energy Choice Coalition, NFP (the "Coalition") submits this Statement of Undisputed Material Facts in support of Plaintiff's Motion for Summary Judgment. All undisputed materials facts listed below are supported by Defendant's answer and the attached declarations. The undisputed material facts are as follows:

**I.  The Parties**

1.  Plaintiff Clean Energy Choice Coalition is an Illinois non-profit organization seeking to guarantee that energy consumers in the Chicagoland area and, more broadly, the state of Illinois have access to a wide range of established and cutting-edge technologies and energy alternatives—including natural gas. Dkt. 16, ¶ 7; Declaration of Lissa Druss (Exhibit A), ¶ 5.

2.  Defendant Village of Oak Park is an Illinois home-rule municipality located in Cook County, Illinois. Dkt. 16, ¶ 11.

**II.  Jurisdiction and Venue**

3.  This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. Dkt. 16, ¶ 12.

4.  Venue is proper in the United States District Court for the Northern District of

1

Illinois pursuant to 28 U.S.C. § 1391(b)(1) and 1391(b)(2), because Oak Park is located wholly within the Northern District of Illinois, and because the facts giving rise to the claims in this Complaint occurred in Oak Park, which is located wholly within this District. Dkt. 16, ¶ 13.

**III.     Oak Park's Ordinance**

5.     In June 2023, Oak Park enacted the Ordinance at the center of this case, which supplements the Building Code and Residential Code[1] by providing that, as to all "new buildings," "[t]he source of energy for the building shall be all electric and *the source of energy shall not be fossil fuels*." Defendant Village of Oak Park's Answer to Plaintiff's Complaint, Dkt. 16, ¶ 15 (quoting Oak Park Vill. Code § 7-1-2 at P301.1 (emphasis added); *id.* § 7-6-2 at X301.1)).

6.     The stated purpose of this prohibition of natural gas appliances is "to reduce production of greenhouse gasses," Oak Park Vill. Code § 7-1-2 at P101.2; *id.* § 7-6-2 at X101.2, and "to provide minimum requirements for electrification for all new buildings," *id.* § 7-1-2 at P101.1; *see also id.* § 7-6-2 at X101.1 (explaining that the Ordinance seeks "to provide minimum requirements for enhanced environmental features in all new residential buildings regulated by" the Residential Code). Dkt. 16, ¶ 19.

7.     In addition to its general prohibition on fossil fuels, the Ordinance specifically prescribes several requirements for appliances installed in new buildings. For example, it amends the Building Code to require all cooktops to be "electric induction types" and all ovens to be "electric types," and it amends both Codes to require that "energy for any clothes dryer shall be

---

[1] Most buildings in the Village of Oak Park ("Oak Park") are subject to the Building Code. Oak Park Vill. Code §§ 7-1-1, 7-1-2. Single- and dual-family homes, however, are generally governed by the "Residential Code." *Id.* §§ 7-6-1, 7-6-2; *see* Bldg. Code § 101.2 (providing that "[d]etached one- and two-family dwellings and townhouses not more than three stories . . . and their accessory structures not more than three stories" may instead comply with the Residential Code).  *See* Dkt. 16, ¶ 14. A true and correct copy of the Village of Oak Park Building and Residential Codes, including the Ordinance, are included for reference as Exhibit E.

provided by an electric heat pump." Oak Park Vill. Code § 7-1-2 at P301.1(6)–(8); *id.* § 7-6-2 at X301.1(6) (Residential Code). The Ordinance also prohibits "directly piped exterior gas fire pits and gas cooking grills whose source of energy is fossil fuels" (though not fire pits or cooking grills powered by fossil fuels stored in tanks or canisters). *Id.* § 7-1-2 P301.1(10); *id.* § 7-6-2 at X301.1(8). Dkt. 16, ¶ 16.

8. The Ordinance went into effect on January 1, 2024. Dkt. 16, ¶ 20.

9. Since the Ordinance went into effect on January 1, 2024, consumers, businesses, and building professionals designing and constructing new buildings in Oak Park have no longer been able to opt for natural gas-powered appliances. Oak Park Vill. Code § 7-1-2 at P301.1; *id.* § 7-6-2 at X301.1; *see also* Dkt. 16, ¶ 21 (admitting that, except with respect to certain exceptions described in the Ordinance, "[a]ll new buildings are required to conform to the Ordinance, and consumers and businesses are prohibited from selecting piped natural gas to power any appliances inside or outside of their building").

10. The Ordinance specifically mandates that building professionals and their customers must choose electric appliances over natural-gas appliances—even if a natural-gas appliance would better fit the customer's needs—subject to only very limited exceptions. Dkt. 16, ¶ 21 (admitting that, except with respect to certain exceptions described in the Ordinance, "[a]ll new buildings are required to conform to the Ordinance, and consumers and businesses are prohibited from selecting piped natural gas to power any appliances inside or outside of their building").

11. The Secretary of Energy is authorized to grant waivers of preemption where the state or local authority demonstrates that the "regulation is needed to meet unusual and compelling State or local energy . . . interests." 42 U.S.C. § 6297(d)(1)(B); *see also id.* § 6297(d)(1)(C)(i)

(interests must be "substantially different in nature or magnitude than those prevailing in the United States generally"). However, Oak Park has not applied for a preemption waiver or attempted to make any such demonstration. Dkt. 16, ¶ 50.

### IV. Harm to Coalition Members

12. The Coalition has numerous members, including International Union of Operating Engineers Local 150, AFL-CIO ("Local 150"), National Association of Homebuilders ("NAHB"), and NPL Construction Co. ("NPL"). Ex. A (Druss Decl.), ¶ 6; Declaration of Martin Durkan (Exhibit B), ¶ 5; Declaration of Pat Cardoni (Exhibit C), ¶ 5; Declaration of Dylan Hradek (Exhibit D), ¶ 5.

13. Local 150 is a Coalition member and labor organization representing nearly 24,000 working men and women, primarily in northeastern Illinois. Ex. B (Durkan Decl.), ¶ 6.

14. Local 150 and its members operate heavy equipment in various industries, including utility installation and maintenance, road construction, building construction, and many others. Ex. B (Durkan Decl.), ¶ 7.

15. Local 150 members receive specialized training on natural-gas distribution and maintenance processes and perform this work regularly. Ex. B (Durkan Decl.), ¶ 8.

16. The Ordinance eliminates significant work opportunities for Local 150 members, directly resulting in job losses, wage reductions, and economic instability. Ex. B (Durkan Decl.), ¶ 9.

17. As a result of the Ordinance, numerous natural-gas projects in Oak Park have been canceled or significantly curtailed, leading to a diminished market for Local 150's skilled heavy equipment operators. Ex. B (Durkan Decl.), ¶ 10.

18. With more than 140,000 members, Coalition member NAHB represents the largest

network of craftsman homebuilders in the United States. Ex. C (Cardoni Decl.), ¶ 6.

19. Each year, NAHB's members construct about 80% of the new homes built in the United States, both single-family and multifamily. Ex. C (Cardoni Decl.), ¶ 7.

20. The Ordinance has increased construction costs in Oak Park substantially—costs that are ultimately borne by NAHB homebuilders and homebuyers. Ex. C (Cardoni Decl.), ¶ 8.

21. Coalition member NPL Construction Co. provides natural gas and energy infrastructure construction solutions, such as installing and restoring natural gas mains, and that business has long included Oak Park. Ex. D (Hradek Decl.), ¶ 6.

22. By prohibiting natural gas in new construction, however, the Ordinance has curtailed demand for NPL's services in Oak Park, directly reducing NPL's revenue. Ex. D (Hradek Decl.), ¶ 7.

23. The Ordinance has led to increased costs, which in turn deny Coalition members potential new customers who would otherwise choose to use natural gas. Ex. B (Durkan Decl.), ¶ 12; Ex. C (Cardoni Decl.), ¶¶ 8-9; Ex. D (Hradek Decl.), ¶ 9.

24. By preventing new buildings from using natural gas, the Ordinance has limited the size of the customer base of various Coalition members. Ex. B (Durkan Decl.), ¶¶ 10-12; Ex. D (Hradek Decl.), ¶ 8.

25. As existing buildings are gradually replaced with new buildings that do not use natural gas, the Ordinance will continuously and permanently reduce Coalition members' existing customer base. Ex. B (Durkan Decl.), ¶¶ 9-12; Ex. D (Hradek Decl.), ¶ 8.

26. Thus, as a result of the Ordinance, Coalition members have suffered and will continue to suffer serious harms, including lost customers, sales, and revenue; loss of employment; and increased expenses,—all expenses which cannot be recouped, and which make Coalition

members' financial suffering an irreparable harm. Ex. B (Durkan Decl.), ¶ 12; Ex. C (Cardoni Decl.), ¶ 9; Ex. D (Hradek Decl.), ¶ 9.

27. Money damages will not adequately remedy the harm already caused by the Ordinance, and the harm that the Ordinance will continue to cause. Ex. B (Durkan Decl.), ¶ 13; Ex. C (Cardoni Decl.), ¶ 10; Ex. D (Hradek Decl.), ¶ 10.

28. A true and correct copy of S. Rep. 100-6 (1987) and H.R. Rep. 100-11 (1987)—referred to in Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment—are attached for reference as Exhibit G and Exhibit F, respectively.

Dated: August 27, 2025

Respectfully submitted,

**CLEAN ENERGY CHOICE COALITION, NFP**

By: /s/ *Christine E. Skoczylas*

Christine E. Skoczylas (#6293811)
Alexander J. Bandza (#6312301)
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606
(312) 537-1313
christine.skoczylas@btlaw.com
abandza@btlaw.com

Kian James Hudson
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204
(317) 229-3111
kian.hudson@btlaw.com

*Attorneys for Plaintiff*

# **CERTIFICATE OF SERVICE**

The undersigned certifies that on August 27, 2025, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ Christine E. Skoczylas*