# EXHIBIT F

S. Rep. No. 6, 100TH Cong., 1ST Sess. 1987, 1987 U.S.C.C.A.N. 52, 1987 WL 61449, S. REP. 100-6 (Leg.Hist.)
**\*\*52** P.L. 100–12, NATIONAL APPLIANCE ENERGY CONSERVATION ACT OF 1987
DATES OF CONSIDERATION AND PASSAGE
Senate February 17, 1987
House March 3, 1987
Senate Report (Energy and Natural Resources Committee) No. 100–6,
Jan. 30, 1987 [To accompany S. 83]
House Report (Energy and Commerce Committee) No. 100–11,
Mar. 3, 1987 [To accompany H.R. 87]
Cong. Record Vol. 133 (1987)
The Senate bill was passed in lieu of the House bill. The Senate Report is set out below.

SENATE REPORT NO. 100–6

January 30, 1987

**\*1** The Committee on Energy and Natural Resources, to which was referred the bill (S. 83) to amend the Energy Policy and Conservation Act with respect to energy conservation standards for appliances, having considered the same, reports favorably thereon with amendments to the text and recommends that the bill (as amended) do pass.

**\*2** PURPOSE

The purpose of S. 83 is to reduce the Nation's consumption of energy and to reduce the regulatory and economic burdens on the appliance manufacturing industry through the establishment of national energy conservation standards for major residential appliances.

SUMMARY OF MAJOR PROVISIONS

There are two basic provisions to the measure: The establishment of Federal standards and the preemption of State standards.

*Standards:* Federal standards are established to take effect in 1988, 1990, 1992, or 1993, depending on the product, and are to remain in effect from 3 to 10 years, also depending on the product. After the 3 to 10 year 'lock-in' period, DOE may promulgate new standards for each product which may not be less than those established by the legislation. The 12 covered products are: refrigerators and freezers; room air conditioners; central air conditioners and heat pumps; water heaters; furnaces; washers; clothes washers; clothes dryers; direct heating equipment; kitchen ranges and ovens; pool heaters; and television sets. The standards in most cases are as strong as, or stronger than, any State standards currently in effect.

**\*\*53** *Preemption:* In general, these national standards would preempt all State standards. However, States may petition DOE for a waiver from the Federal standards. Moreover, State standards enacted before January 8, 1987, and which become effective before January 3, 1988, are 'grandfathered' by the bill and will remain effective until the appropriate Federal standard begins.

States may petition DOE to be waived from Federal preemption, but achieving the waiver is difficult. In order to receive a waiver a State must show that its regulation is needed to meet 'unusual and compelling State and local interests.' These interests are defined as being substantially different in nature or magnitude from those of the Nation generally. Furthermore, DOE may not grant a waiver if interested persons show that the State regulation will significantly burden marketing, manufacturing, distribution, sale or servicing of appliance products nationally. Nor may DOE grant a waiver if interested persons show that the State regulation is likely to result in the unavailability in the State of a product type or of products of a particular performance

class, such as frost-free refrigerators. A waiver would become effective 3 years after it is granted by DOE, or after 5 years if the Secretary finds that the time is needed for redesign or retooling, etc.

In general, a State may not receive a waiver either prior to effective date of the Federal Standard or during the 3 to 10 year 'lock-in' period for the Federal standards except if the State can show that an 'energy emergency condition' exists within the State which imperils the health, safety and welfare of its residents.

The law would also restrict related State enacted performance-based building codes. They may be adopted by States only if they do not require the installation of covered products which have efficiencies exceeding the applicable Federal standard.

**\*3** Because the State of California has already enacted standards and has been very active on this issue, special provisions are included in the bill relating to these State standards. In the case of the refrigerator/freezer standard, if DOE does not promulgate a final rule establishing a new Federal standard following the initial 'lock-in' period ending January 1, 1993, then California's second tier standards (now to be effective on January 1, 1992) would go into effect on January 1, 1993, but only in California, without California receiving a waiver from Federal exemption.

*Test procedures, enforcement, and reporting:* S. 83 has three other general provisions relating to test procedures, enforcement, and reporting. First, test procedures would not change from existing law unless DOE recommends their revision. In this case, S. 83 requires that standards shall be adjusted so that revisions of the test procedures do not affect the actual stringency of the standards. Second, the bill would provide expeditious judicial relief should DOE fail to comply with statutory deadlines by stating that there is a Federal cause of action in such cases and that the courts are required to advance and expedite such cases. Section 336 of EPCA relating to administrative procedures and judicial review remains essentially intact except for technical changes and the addition of a new subsection to allow persons to seek declaratory judgments that State building codes do not comply with the Act. S. 83 does not require a **\*\*54** State to petition DOE to show that their building codes are consistent with the Act. Finally, as for reporting, DOE may require submission of reports by manufacturers but DOE would be required to use existing information when possible and to minimize industry's reporting burden.

## BACKGROUND AND NEED

In 1975, Congress passed the Energy Policy and Conservation Act (EPCA) ( Public Law 94–163) which required the Department of Energy (DOE) to mandate energy efficiency labeling of major residential appliances and to prescribe voluntary industry appliance efficiency improvements. In addition, EPCA authorized, but did not require, DOE to establish mandatory efficiency standards if necessary. In 1978, Congress enacted the National Energy Conservation Policy Act (NECPA) (Public Law 95–619) which amended EPCA to require that energy efficiency standards be established for each of 13 classes of appliances that are major consumers of energy. The standards, which would preempt State laws on appliance efficiency, were to 'be designed to achieve the maximum improvement in energy efficiency which the Secretary determines is technologically feasible and economically justified.'

The Department proceeded with rulemaking and in 1980 issued proposed standards for 8 of the 13 classes of covered appliances. In January of 1981, however, the Department suspended this process and announced in April 1982 a finding that no standards were economically justified. The DOE adoption of this 'no-standard' standard precluded individual States from adopting their own efficiency standards due to the preemption provisions of EPCA.

The 'no-standard' standard was immediately challenged in court by the Natural Resources Defense Council (NRDC) which sued to **\*4** overturn the standards as thwarting the congressional intent that Federal standards be established. On July 16, 1985, the D.C. Circuit Court of Appeals issued a unanimous decision striking down the 'no-standard' standards as '. . . contrary to law' and directing DOE to initiate a new rulemaking in accordance with the statutory intent of NECPA (NRDC v. Herrington, 768 F.2d 1355 (D.C. Cir. 1985)). That new rulemaking is still in progress.

It is currently estimated that approximately 18 percent of the Nation's energy is consumed by major home appliances such as furnaces, hot water heaters, clothes washers and dryers, air conditioners, refrigerators, stoves, etc. Since the energy price increases of the early 1970's, appliance efficiency has been the subject of national interest.

During the 1970's some States began enacting appliance efficiency standards on their own. NECPA provides that the Federal standards preempt State standards, except that States may petition DOE to grant a waiver from preemption if a State is able to show justification for its standards over those of DOE. While DOE adopted its policy of the 'no-standard' standards, it also initiated a general policy of granting petitions from States requesting waivers from preemption. As a result, a system of separate State appliance standards has begun to emerge and the trend is growing.

Because of this trend, appliance manufacturers were confronted with the problem of a growing patchwork of differing State regulations **55 which would increasingly complicate their design, production and marketing plans. Regulations in a few populous States could as a practical matter determine the product lines sold nationwide, even in States where no regulations existed. In an effort to resolve this problem the major appliance manufacturer associations began negotiations with the Natural Resources Defense Council in early 1986. At the end of July an agreement was reached and it was embodied in legislation which was introduced on August 15, 1986, in the House (H.R. 5465) and in the Senate (S. 2781). H.R. 5465 was passed without objection by both Houses of Congress on October 15, 1986 and with only four substantive changes:

   1. Television sets were added as a covered product for which the Secretary of Energy may prescribe an energy conservation standard (section 322(a)(12) and section 325(i)(3)).

   2. An energy conservation standard was established for the heating cycle of heat pumps (section 325(d)(2) and section 325(d)(3)(A)).

   3. The energy conservation standards for furnaces were modified to provide different treatment for furnaces having an input of less than 45,000 Btu's per hour (section 325(f)(B)).

   4. Two new sections were added which did not relate to appliance standards, but instead dealt with issues pending before the Federal Energy Regulatory Commission.

On November 1, 1986, H.R. 5465 was pocket-vetoed by the President. The President's Memorandum of Disapproval stated that: 'The bill intrudes unduly on the free market, limits the freedom of choice available to consumers who would be denied the opportunity to purchase lower-cost applicances, and constitutes a substantial intrusion into traditional state responsibilities and prerogatives.'

 *5 As introduced, S. 83 is the same legislation which was unanimously approved by Congress last October, except that sections 12 and 13 of last year's bill, regarding issues unrelated to appliance efficiency, have been deleted.

LEGISLATIVE HISTORY

Last year, S. 2781 and the House companion measure, H.R. 5465, were introduced on August 15, 1986. The Subcommittee on Energy Regulation and Conservation held a hearing (S. Hrg. 99–943) on S. 2781 on September 16, 1986. On September 22, 1986, the House passed H.R. 5465 and it was reported (S. Rpt. 99–497) by the Senate Committee on Energy and Natural Resources on September 24, 1986 in lieu of S. 2781. The Senate passed H.R. 5465, and the House concurred with the Senate amendments, on October 15, 1986. The measure was pocket-vetoed on November 1, 1986. S. 83 was introduced on January 6, 1987, as was House companion measure H.R. 87.

COMMITTEE RECOMMENDATIONS AND TABULATION OF VOTES

The Committee on Energy and Natural Resources, in open business session on January 28, 1987, without objection of a quorum present, recommended that the Senate pass S. 83, if amended as described herein.

**\*\*56** COMMITTEE AMENDMENTS

The Committee ordered S. 83 reported with seven amendments.

1. On page 3, line 7, delete the word 'and' and insert in lieu thereof the word 'or'. This is a technical amendment.

2. On page 3, line 8, before the semicolon insert 'and does not communicate with air in the conditioned space'. This is a clarifying amendment with the result that, for the purposes of testing, it is assumed that all combustion and ventilation air used by warm air furnaces is admitted through grills or ducts from outdoors and does not communicate with air in the conditioned (heated) space. In effect, then the furnace is assumed to be isolated from the conditioned space, i.e., the living space. This was the intent of the bill as passed last year.

3. On page 20, between lines 16 and 17, insert the words 'in gallons' following the word 'Volume' each place it appears. This is a clarifying amendment to identify the unit of measurement to be used for the storage volume of water heaters when calculating energy factors.

4, 5, and 6. On page 23, lines 13 through 18, the Committee modified the language of the bill amending section 325(f)(1)(B) of EPCA to include an additional clause (iii). The purpose of the new clause is to clarify that, in setting an energy conservation standard for small gas furnaces (those having an input of less than 45,000 Btu's per hour), the Secretary of Energy shall, in a manner which is otherwise consistent with this Act, establish the standard at a level between 71 percent and 78 percent AFUE 'which the Secretary determines is not likely to result in a significant shift from gas heating **\*6** to electric resistance heating with respect to either residential construction or furnace replacement.'

The Committee did not establish an initial standard for small gas furnaces in the statute and instead directed the DOE to establish the standard by rule at an annual fuel utilization efficiency of not less than 71 percent and not more than 78 percent. The Committee was concerned that setting a standard for small gas furnaces, at or near 78 percent (the level for larger gas furnaces), would increase their initial price. Because of the competition between small gas furnaces and electric resistance heating in some areas of the Nation, such a price increase for small gas furnaces could induce builders or consumers to switch to electric resistance hearing. No specific standard for electric resistance heating is included in this bill.

Section 325(j) provides additional safeguards against a standard for small gas furnaces being set at a level that results in a buying preference or significant switching from gas heating to electric resistance heating (see section-by-section analysis).

7. On page 49, line 5, delete the word 'basis.' and insert in lieu thereof 'or equivalent cost basis.' Section 327(f)(3) establishes the requirements which a State building code, concerning the efficiency of a covered product, must meet in order to avoid preemption upon enactment of a Federal standard. Section 327(f)(3)(C) requires that a credit to the energy consumption or conservation objective allowed by the code, for installing covered products having energy efficiencies exceeding the standard, be given in terms of energy **\*\*57** use. The amendment is necessary because some State energy codes are based on energy costs, and not on an energy use. This amendment clarifies that such credits may also be based on equivalent energy cost. For example, Oregon's code relies on total life-cycle costs for building construction and operation. Thus, the legislation, as amended, would allow tradeoffs between components based either on their energy usage or equivalent energy costs; including the appliances' initial purchase cost and operating costs, but excluding subsidies or rebates. This construction parallels section 327(f)(3)(F), which allows energy objectives to be specified in either energy use or energy cost terms.

SECTION-BY-SECTION ANALYSIS

*Section 1* entitled the 'National Appliance Energy Conservation Act' (the 'Act').

*Section 2 (definitions)* amends section 321(a) of the Energy Policy and Conservation Act ('EPCA') by adding definitions which are required to implement the specific standards provisions and other provisions added to EPCA by the Act. Section 2(a) defines 'energy conservation standard' to include the performance standards set forth in the Act as well as the design requirements. Section 2(b) defines the technical terms that are used in the standards.

*Section 3 (Coverage)* amends section 332(a) of EPCA, listing the products that are covered by the Act. These products are: refrigerators; refrigerator-freezers; freezers; room air conditioners; central air conditioners and central air conditioning heat pumps; central air conditioners and central air conditioning heat pumps; water **\*7** heaters; pool heaters; direct heating equipment; furnaces; dishwashers; clothes washers; clothes dryers; television sets and kitchen ranges and ovens. Other consumer products may be regulated by the Secretary under existing section 322(b) of EPCA. Consumer products designed solely for use in recreational vehicles and other mobile equipment are not covered by the Act.

*Section 4 (Test Procedures):* Section 323 of EPCA is amended so as to conform with the establishment of specific standard levels in the Act. New section 323(a) states that all test procedures and related determinations prescribed or made by the Secretary with respect to any covered product, which are in effect on the date of enactment of the Act, remain in effect until the Secretary amends the test procedures and related determinations.

New section 323(b) authorizes the Secretary, with the assistance of the National Bureau of Standards, to amend existing test procedures, or to prescribe new test procedures for any covered product for which there are no test procedures. If the Secretary determines that a test procedure should be prescribed or amended, he shall promptly publish in the Federal Register proposed test procedures and afford interested parties an opportunity for comment. The Act extends the comment period to a minimum of 60 days (compared to 45 days under current law) and allows the Secretary to extend this comment period to as much as 270 days for good cause shown.

New section 323(c) modifies existing law regarding the restrictions on certain representations in writing or in broadcast advertisements about the energy characteristics of covered products.

New section 323(d) restates existing law with minor revisions regarding cases in which test procedures are not required.

**\*\*58** New section 323(e) addresses the steps the Secretary must take to conform an energy conservation standard to an amended test procedure in the event a test procedure is amended.

*Section 5 (Energy Conservation Standard):* This section significantly amends existing Section 325 of EPCA by establishing the specific initial energy conservation standards for the covered products (with the exception of televisions and small gas furnaces), and by requiring future rulemakings under mandatory schedules and revised criteria.

Under each subsection, a minimum duration period (i.e., the period between the effective date of standards and the dates of possible revisions thereto) is prescribed for each initial and revised standard. Manufacturers are also given specified lead times (i.e., the time between final publication of a revised standard by DOE and the effective date of the revised standard) within which to redesign their products to comply with new standards.

New section 325(a) contains the purpose of this section.

New section 325(b) contains the initial standard levels for refrigerators, refrigerator-freezers and freezers.

New sections 325(c) through 325(h) contain the initial standard levels and applicable dates for, respectively: room air conditioners (section 325(c)); central air conditioners and central air conditioning heat pumps (section 325(d)), water heaters, pool heaters, and direct heating equipment (section 325(e)); furnaces (section 325(f)); dishwashers, clothes washers and clothes dryers (section 325(g)); kitchen **\*8** ranges and ovens (section 325(h)); and television sets (section 325(i)(3)).

New section 325(i), which essentially restates existing law, allows the Secretary in his discretion to promulgate standards for additional products, and specifies that a 5-year lead time is required between the publication of a final rule and the effective date of the standards. The subsection explicitly permits the Secretary to prescribe an energy conservation standard for television sets but such a standard may not become effective with respect to products manufactured before January 7, 1992.

New section 325(j) establishes the criteria by which the Secretary may prescribe new or amended standards. The Secretary may not increase the maximum allowable energy use or decrease the minimum required energy efficiency of a covered product.

This section retains the requirements of existing law that energy conservation standards, including new or amended standards, shall be designed to achieve the maximum improvement in energy efficiency which the Secretary determines is 'technologically feasible' and 'economically justified.'

With respect to the small gas furnace, it is the Committee's intent that should the Secretary determine that significant switching is occurring as a result of the small gas furnace standard, then he has the authority to review the standard and through a rulemaking establish a new standard, otherwise consistent with this Act, which the Secretary determines wil avoid such switching. Obviously, in this case, the Secretary is authorized to lower an energy conservation standard notwithstanding section 325(j)(1), but he may not lower the standard below 71 percent.

This section also modifies the requirements of existing law regarding the Secretary's evaluation of the technological feasibility **\*\*59** and economic justification of a proposed standard. For example, the section creates a statutory rebuttable presumption that a new or amended standard level is economically justified if the Secretary makes certain findings.

New section 325(j)(4) also prohibits the Secretary from prescribing a new or amended standard if he finds that the standard is likely to result in the unavailability in the United States in any covered product type or class of performance characteristics (including reliability), features, sizes, etc.

With respect to the small gas furnace standard (section 325(f)(1)(B)), the Secretary must consider the impact of any lessening of competition that is likely to result from the establishment of a standard for small furnaces. He must consider the economic impact of the standard on manufacturers and consumers. In addition, the Secretary must consider the total projected amount of energy savings likely to result from the establishment or revision of a standard for small furnaces.

Finally, section 325(j)(4) forbids a standard being set so as to result in the unavailability in the United States in any covered product type (or class) of performance characteristics, such as size or capacity. This paragraph, upon a sufficient showing, would forbid a standard for small gas furnaces being set at a level that would increase the price to the point that the product would be **\*9** noncompetitive and that would result in minimal demand for the product.

New subsection 325(k) contains procedures for prescribing new or amended standards. This section increases to 60 days (versus 45 days in current law) the public comment period on an advanced notice of proposed rulemaking and on proposed rules. It also provides that an amended or new final rule shall be published as soon as practicable but not less than 90 days after the publication of the proposed rule in the Federal Register. In other respects, this subsection essentially retains the requirements of current law.

Subsections (l), (m) and (o) are essentially identical to subsections (f), (j) and (e), respectively, or current law.

Subsection (n) states that compliance with the performance standards either set forth in or required by section 325 shall be determined using the test procedures and compliance criteria of section 323.

*Section 6 (Requirements of Manufacturers):* Section 326(d) of EPCA is amended to add a requirement that the Secretary shall consider existing public sources of information including nationally-recognized certification programs of trade associations. The Secretary is also required to exercise his authority in a manner designed to minimize unnecessary burdens on manufacturers of covered products.

*Section 7 (Effect on Other Laws):* Section 327 of EPCA is amended to create new preemption provisions, including criteria under which States can receive waivers from preemption.

Section 327(a), which essentially restates existing law, and provides that the Act supersedes State and local regulations regarding testing and labeling in certain cases.

New section 327(b) describes how preemption would apply during the period between the date of enactment of the Act and the effective dates of each Federal energy conservation standard. As a general **\*\*60** principle, no State appliance efficiency regulations or requirements shall be applicable unless such regulations or requirement are prescribed or enacted before January 8, 1987, and are applicable to products before January 3, 1988. The section also lists other exceptions to preemption.

New section 327(c) states that on the effective date for each Federal energy conservation standard, that standard preempts State regulation, as provided under current law. This preemption is subject to the certain exceptions for building codes in new section 327(f), a state procurement regulation described in subsection (e), a regulation prohibiting constant burning pilot light for pool heaters, and any waiver from preemption granted by DOE upon State petition.

New section 327(d) allows States to file petitions seeking waiver of Federal preemption. This subsection provides new and more stringent criteria that a State must establish by a preponderance of the evidence in order to receive an exemption. The State is required to show that its regulation is needed to meet 'Unusual and compelling' State or local interests.

New subsection (d) also provides that even if the State has made a showing of an unusual and compelling interest, the Secretary may not grant the requested waiver if he finds that interested persons **\*10** have established by a preponderance of the evidence that such State regulation will significantly burden marketing, manufacturing, distribution, sale or servicing of the covered products or is likely to result in the unavailability in the State of any covered product type (or class) of performance characteristics that are substantially the same as those generally available in the State at the time of the Secretary's finding.

New subsection 327(d) further provides that any State regulation for which a waiver is granted shall apply to products manufactured three years after the rule granting such exemption is published in the Federal Register; however, the Secretary may lengthen the time to 5 years if he finds that additional time is necessary for retooling, redesign, etc.

In general, no State regulation, except as specified in subsection (b), may go into effect prior to the earliest possible effective date established by the Act for a revision of the energy conservation standard. However, a State may implement its regulation before that date if it can show by a preponderance of the evidence that an 'energy emergency condition' exists within the State.

This subsection further provides that any interested person may file a petition requesting the Secretary to withdraw the rule issued with respect to a waiver petition.

Section 327(e) provides that State or local procurement standards more stringent than the Federal energy conservation standards are not superseded by the part. This provision is substantially the same as section 327(c) of current law.

New section 327(f) describes Federal preemption with regard to energy efficiency or energy use requirements regarding covered products contained in State and local building codes for construction. State and local building codes governing new construction typically regulate the energy efficiency of central heating and cooling equipment and water heaters. This section states that energy efficiency or use requirements contained in State or local building **61 codes enacted or prescribed before January 8, 1987 are not preempted until the effective date of the Federal energy conservation standard. Such requirements adopted on or after January 8, 1987, are not preempted if they do not require the energy efficiency of a covered product to exceed the standard set forth in a 'national voluntary consensus standard'; or in a grandfathered State standard or standard for which a State waiver has been obtained, whichever is higher. National voluntary consensus standards include those adopted by the Association of Air Conditioning, Heating and Refrigerating Engineers (ASHRAE), which sets energy efficiency standards using procedures sanctioned by the American National Standards Institute. ASHRAE standards are adopted by most States and local building codes.

Section 327(f)(3) describes the preemption of States or local building codes that exists after the effective date of the initial Federal standard for a covered product.

This paragraph describes the requirements that must be met in order for State or local building codes not to be preempted after such effective date. The paragraph, therefore, allows a State flexibility to implement performance-based codes. These codes authorize *11 builders to adjust or trade off the efficiencies of the various building components so long as an energy objective is met.

In order to avoid preemption of its building code provisions concerning covered products, this paragraph also requires States building codes which establish 'credits' for various conservation measures, to provide, to the greatest degree possible, one-for-one equivalency between the energy efficiency of these differing measures and the credits provided for such energy efficiency. The Committee recognizes that in some cases, exact equivalency is not possible. For example, some conservation measures may only be available to the builder in discreet levels of energy efficiency, such as insulation which is available only in certain thicknesses. It is the Committee's intent, however, that State building codes follow a one-for-one equivalency as closely as possible, to assure that the credits for exceeding Federal standards are even-handed and are not unfairly weighted resulting in undue pressure on builders to install covered products exceeding Federal standards.

The limited requirements of this paragraph are designed to ensure the performance-based building codes cannot circumvent the federal standard for a given covered product by effectively requiring the installation of such product with an efficiency exceeding the applicable Federal standards or State standards for which a waiver from preemption has been obtained. Finally, paragraph (4) states that a State or local government is not required to submit a petition to the Secretary in order to enforce or apply its building code, unless the building code requires the installation of covered products with efficiencies exceeding both the applicable Federal standard and any applicable State standard that has been granted a waiver from preemption.

Subsection (g) states that no disclosure under this part creates an expressed or implied warranty under State or federal law regarding energy efficiency.

*Section 8 (Citizen Status):* Section 335(a) of EPCA is amended by adding a Federal cause of action against the Secretary for failing to **62 comply with the nondiscretionary duty to issue a proposed or final rule according to the schedule in new Section 325 of EPCA. The courts are required to advance any such cases on the docket and to expedite the disposition of such cases. Jurisdiction is provided for the court to order appropriate relief, including relief that ensures the Secretary's compliance with future deadlines for that covered product.

*Section 9 (Administrative Review and Judicial Review):* Section 336 of EPCA remains essentially the same except for minor amendments. In addition, new subsection (c) states that jurisdiction is vested in Federal district courts over actions brought by any adversely affected person to determine whether a State of local government is complying with section 327 of this Act. This provision allows persons to seek declaratory judgments that State building codes do not comply with the criteria in the Act.

The provision is necessary because the Act does not require States to petition DOE to show that their building codes comply with Section 327(f).

*Section 10 (Annual Report):* Section 338 of EPCA is amended by adding at the end a statement that nothing in the Section provides **\*12** a defense or justification for a failure by the Secretary to comply with a nondiscretionary duty.

## COST AND BUDGETARY CONSIDERATIONS

The following estimate of costs of this measure has been provided by the Congressional Budget Office:

U.S. CONGRESS,
CONGRESSIONAL BUDGET OFFICE,
*Washington, DC, January 29, 1987*.

Hon. J. BENNETT JOHNSTON, Jr.,
*Chairman, Committee on Energy and Natural Resources, U.S. Senate, Dirksen Senate Office Building, Washington, DC*.

DEAR MR. CHAIRMAN: The Congressional Budget Office has reviewed S. 83, the National Appliance Energy Conservation Act of 1987, as ordered reported by the Senate Committee on Energy and Natural Resources, January 28, 1987.

S. 83 establishes energy conservation standards for categories of covered appliances. It provides a schedule for the Secretary of Energy to evaluate these standards to ensure that the maximum energy efficiency that is technologically feasible and economically justified is being achieved. This bill also provides for the preemption of state energy conservation appliance standards after the federal standards are in effect.

CBO estimates that S. 83 will have no significant impact on government spending for fiscal years 1988 through 1992. The Department of Energy currently plans to conduct technical and economic evaluations of appliances on essentially the same schedule described in S. 83.

Enactment of this bill would not directly affect the budgets of state or local governments.

If you wish further details on this estimate, we will be pleased to provide them.

With best wishes,

Sincerely,

EDWARD GRAMLICH,
*(for Rudolph G. Penner, Director)*.

## **\*\*63** REGULATORY IMPACT EVALUATION

Under existing law the Department of Energy is required to implement a Federal energy conservation program for home appliances. S. 83 would amend existing law and decrease the number of regulations associated with others. On balance, however, the net effect of S. 83 would be a reduction in regulations resulting from the existing program.

S. 83 eliminated the need for certain regulations. For example, S. 83 would substantially reduce the regulatory and economic burdens of the Federal appliance energy conservation program on the appliance manufacturing industry by reducing appliance regulation at the State level. The bill increases Federal preemption of State regulation. As a result, industry would avoid the burdens of a patchwork of conflicting and unpredictable State regulations. In addition, S. 83 establishes energy conservation standards for applicance **\*13** types which, without enactment of the measure, would be required to be established through more costly regulatory procedures conducted by the Department.

S. 83 would, on the other hand, increase regulations in other areas by requiring greater State and local compliance with the Federal program. For Example, S. 83 would establish two procedures under which a State may petition for a waiver from Federal preemption of State appliance efficiency regulations. Currently, there is only one petition procedure. Additionally, S. 83 would establish a new regulatory requirement that State building codes must comply with certain requirements of the Federal appliance energy conservation program in order to avoid preemption. These compliance provisions of S. 83 increase the regulatory burden for States which, under current law, are free to develop and promulgate building codes without regard to the Federal appliance energy conservation program.

Although it is not possible to quantify the areas in which regulations are increased or decreased by S. 83, an evaluation of such areas clearly demonstrates that the net effect of the measure would be to reduce, rather than increase, regulations and economic costs. Moreover, the Congressional Budget Office estimates a net reduction in Federal Government costs over the next 3 fiscal years as a result of passage of this legislation. In addition, there is a strong consensus within the appliance manufacturing industry that the measure would reduce the industry's economic and regulatory burdens.

## EXECUTIVE COMMUNICATIONS

The Committee has received no reports or communications relating to S. 83.

S. Rep. No. 6, 100TH Cong., 1ST Sess. 1987, 1987 U.S.C.C.A.N. 52, 1987 WL 61449, S. REP. 100-6 (Leg.Hist.)

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.  10