**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CLEAN ENERGY CHOICE COALITION, NFP )
)
             Plaintiff, )
)   Case No. 1:25-cv-04353
    v. )   Hon. Franklin U. Valderrama
)
VILLAGE OF OAK PARK, ILLINOIS, )
)
             Defendant.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
SUBMISSION OF SUPPLEMENTAL AUTHORITY**

In accordance with the Court's March 31, 2026 minute entry, Doc. 54, Plaintiff Clean Energy Choice Coalition, NFP (the "Coalition") hereby files its response to the submission of supplemental authority filed by Defendant Village of Oak Park ("Oak Park"). The two out-of-circuit district court decisions cited in Oak Park's submission simply repeat the arguments made by the dissent in *California Restaurant Association v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024). And as explained below and in the Coalition's earlier briefing, those arguments are foreclosed by the plain text of the Energy Policy and Conservation Act ("EPCA").

**ARGUMENT**

This case turns on a pure legal question: Does EPCA, which expressly preempts laws "concerning the … energy use" of consumer and industrial appliances, 42 U.S.C. §§ 6297(c), 6316(b)(2)(A), bar Oak Park from enforcing its ban on natural-gas appliances in new buildings?

The Ninth Circuit's majority opinion in *California Restaurant Association*—the only appellate decision to address this question—correctly and thoroughly explains why the answer to this question is "Yes." As the majority articulated in invalidating the City of Berkeley's similar natural gas ban, "a regulation on 'energy use' fairly encompasses an ordinance that effectively eliminates the 'use' of an energy source." 89 F.4th at 1102. After all, EPCA defines "energy use"

1

as "the quantity of energy directly consumed by a consumer product at point of use," and defines "energy" to "mean[] electricity, or fossil fuels." 42 U.S.C. § 6291(3), (4). And EPCA specifically contemplates that its express-preemption provision will apply, among other things, to "building code requirements." 42 U.S.C. § 6297(f). "[P]utting these terms together, EPCA preempts regulations, including 'building code requirements,' that relate to 'the quantity of [natural gas] directly consumed by' certain consumer appliances at the place where those products are used." *Cal. Rest. Ass'n*, 89 F.4th at 1101-02. And "a building code that prohibits consumers from using natural gas-powered appliances in newly constructed buildings necessarily regulates the 'quantity of energy directly consumed by [the appliances] at point of use.'" *Id*. at 1102.

Against this straightforward interpretation, litigants opposing EPCA preemption have advanced an alternative theory—a theory that was adopted by the dissent in *California Restaurant Association*, and that has since been reiterated by a handful of district court decisions, including the two March 2026 decisions that Oak Park cites in its submission of supplemental authority. *See Cal. Rest. Ass'n*, 89 F.4th at 1119 (Friedland, J., dissenting); *Ass'n of Contracting Plumbers, Inc. v. City of New York*, No. 23-CV-11292 (RA), 2025 WL 843619 (S.D.N.Y. Mar. 18, 2025); Doc. 53 (citing *Nat'l Assoc. of Home Builders v. Montgomery County*, No. 24-cv-3024 (PX), 2026 WL 817322 (D. Md. Mar. 25, 2026); *Nat'l Assoc. of Home Builders v. District of Columbia*, No. 24-CV-02942 (ACR), 2026 WL 837674 (D.D.C. Mar. 26, 2026)). As Oak Park demonstrated in its summary judgment briefing, this theory is meritless. *See* Doc. 28 at 11–12; Doc. 46 at 3–6.

The Ninth Circuit dissent and district court decisions advance the theory "that 'energy use' as defined by EPCA is a technical term measuring the efficiency of a product as manufactured—not 'the quantity of energy used after the product was sold to the consumer.'" *Montgomery Cty.*, 2026 WL 817322 at *6; *see DC*, 2026 WL 837674 at *7-8. The theory then maintains that under

2

this technical definition of "energy use," EPCA preempts only "regulations that govern the design, manufacture, and production of an appliance." *DC*, 2026 WL 837674 at \*6. Under this narrow view, a local regulation is preempted only "where it affects the appliance's performance under "simulat[ed]" test conditions, not in other settings." *Id.* (citation omitted); *see also Cal. Restaurant Ass'n*, 89 F. 4th at 1122 (Friedland, J., dissenting); *Montgomery Cty.*, 2026 WL 817322 at \*6.

This theory, already rejected by the Ninth Circuit, falls apart under scrutiny. Even accepting its technical definition of "energy use," it renders superfluous EPCA's building code provision, which states that a "regulation . . . contained in a State or local building code for new construction concerning the energy efficiency or energy use of a covered product" is preempted unless it complies with various detailed requirements. 42 U.S.C. §6297(f). Because building codes do not directly regulate appliance design, this exception "demonstrates that EPCA's preemptive scope extends beyond direct or facial regulations of covered products to at least include building codes 'concerning the energy . . . use' of such products." *Cal. Restaurant Ass'n*, 89 F. 4th at 1101.

In other words, building codes regulate *buildings*; by definition, they do not directly regulate the "design, manufacture, and production" of appliances, much less regulate how those appliances perform in "simulated test conditions." This theory is thus flatly inconsistent with the building code exemption, which plainly contemplates that *some* building codes *are* preempted. It therefore violates elementary principles of statutory interpretation. *Freytag v. C.I.R.*, 501 U.S. 868, 877 (1991) (expressing a "deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment").

The force of this point is so strong that the Ninth Circuit dissent, and the district courts following it, concede points that are inconsistent with their professed only-regulations-of-performance-on-the-factory-floor position—which underscores the inherent incoherence of their

3

theory. For example, the *District of Columbia* court conceded that EPCA *would* preempt a building code "provid[ing] that all gas appliances consume only a certain amount of energy while switched on in certain buildings." 2026 WL 837674 at \*9; *see also Cal. Restaurant Ass'n*, 89 F.4th at 1125 (Friedland, J., dissenting) ("EPCA contemplates preempting building codes that set building-wide energy efficiency standards that can only be met through the use of hyper-efficient appliances."). Of course, there is *no legally significant difference* between a regulation that limits gas appliances to a "certain amount of energy" and Oak Park's ordinance. The only difference is that Oak Park has a categorical ban (*i.e.*, zero), whereas these decisions refer to a non-zero "cap[]" on "energy consumption." *Id.* This distinction has no legal relevance under the statute, for a cap of zero and a cap of slightly-more-than-zero *both* indisputably regulate a "quantity of [fossil fuels] directly consumed by a consumer product" and are thus preempted by EPCA. 42 U.S.C. § 6291(3), (4).

In sum, the supplemental authorities adopt the same theory advanced by the Ninth Circuit dissent in *California Restaurant Association*—a theory that is controverted by the EPCA's plain language, cannot be reconciled with the building code exception, and produces absurd results. In contrast, the Coalition's straightforward interpretation remains the only one that squares with EPCA's language. EPCA preempts regulations "*concerning*" the "quantity of energy directly consumed by a consumer product at point of use." The use of such words "in a legal context generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *Lamar, Archer & Cofrin, LLP v. Appling,* 584 U.S. 709, 717 (2018). Thus, even granting the technical (rather than commonsense) understanding of "point of use," EPCA's use of "concerning" (in conjunction with its building code provision) extends preemption to encompass building codes that cap or prohibit the use of "electricity, or fossil fuels." Because that is precisely what Oak Park's ordinance does, it is preempted.

4

Dated: April 8, 2026

Respectfully submitted,

**CLEAN ENERGY CHOICE
COALITION, NFP**

By: /s/ *Christine E. Skoczylas*

Christine E. Skoczylas (#6293811)
Alexander J. Bandza (#6312301)
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606
(312) 537-1313
christine.skoczylas@btlaw.com
abandza@btlaw.com

Kian James Hudson
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204
(317) 229-3111
kian.hudson@btlaw.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on April 8, 2026, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ Christine E. Skoczylas*