**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CLEAN ENERGY CHOICE COALITION, NFP | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:25-cv-04353 |
| v. | ) | Hon. Franklin U. Valderrama |
| | ) | |
| VILLAGE OF OAK PARK, ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
SUBMISSION OF SUPPLEMENTAL AUTHORITY**

Plaintiff Clean Energy Choice Coalition, NFP (the "Coalition") hereby files its response to the supplemental authority submitted by Defendant Village of Oak Park ("Oak Park"), ECF 58, and highlights several aspects of *Association of Contracting Plumbers of the City of New York, Inc. v. City of New York* ("*Plumbers*"), Nos. 25-977 & 25-2041, 2026 WL 1871692 (2d Cir. June 30, 2026), that are material to the pending cross-motions for summary judgment.

**I.**     *Plumbers'* **Discussion of EPCA's Exemption from Preemption for Certain Building Codes Supports the Coalition's Position**

To begin, though *Plumbers* concurs with Oak Park that a "product's 'energy use' must be a pre-determined, fixed measurement that does not rely upon a product's real-world use," 2026 WL 1871692, at *4, *Plumbers* does *not* agree with Oak Park that local regulations can escape preemption simply by addressing "real-world use" (a position that would make it trivially easy to evade preemption). *See id.* at *5 ("[O]ur interpretation of 'energy use' does not end the preemption inquiry. The preemption provision covers regulations '*concerning* the ... energy use' of covered appliances." (emphasis in original)). In particular, addressing EPCA's exemption from preemption for certain building codes, 42 U.S.C. § 6297(f)(3), *Plumbers* recognized that "for the exemption to make any sense, the kind of regulation it describes must be preempted in the first place;

1

otherwise, the exemption would do no work" —precisely the canon-of-construction argument the Coalition advanced in its summary judgment briefing. *Id.* at \*11; *compare* ECF 46 at 10.

*Plumbers* thus held that the building-code exemption confirms that EPCA *does* preempt building codes that "regulat[e] on a building-wide scale" to "achieve[] the goal of regulating the performance of the individual appliances within that building." 2026 WL 1871692, at \*11 (citing *Metropolitan Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 158 (2d Cir. 2010)). "By targeting building-wide energy conservation, such regulations arguably 'reference' appliances' individual 'energy use.'" *Id.* And "the regulations covered by the building code exemption may also have an impermissible 'connection' with products' 'energy use' because they directly implicate Congress's objectives in maintaining uniform energy conservation standards. If states were permitted to regulate energy conservation on an aggregated scale . . . states could easily escape the preemption provision's reach by a simple refashioning of their regulations." *Id.*\* *Plumbers* thus implicitly rejects the position Oak Park has advanced here—that a local regulation can escape preemption merely by targeting actual energy consumption rather than targeting manufacturers' design specifications. *See* ECF 35 at 14, 16–17. *Plumbers* recognized that such a reading would render the building code exemption superfluous, because building codes by definition do not directly regulate the design of "a certain appliance." 2026 WL 1871692, at \*10.

---

\* *Plumbers* also favorably cited the Ninth Circuit's opinion in *Building Industry Association of Washington v. Washington State Building Code Council*, 683 F.3d 1144, 1151 (9th Cir. 2012), acknowledging that the Ninth Circuit in that case "did not question that the regulation would be preempted" if it did not satisfy EPCA's detailed requirements for exempting building codes, and noted that that court's "analysis squares with our interpretation." *Plumbers*, 2026 WL 1871692, at \*11 n.13 (citing *Bldg. Indus. Ass'n*, 683 F.3d at 1151). Notably, the building code at issue in *Building Industry Association* addressed real-world energy use: It mandated "a 15% reduction in new buildings' *energy consumption*" in pursuit of "against "the broader goal of building *zero fossil-fuel greenhouse gas emission homes and buildings* by the year 2031." 683 F.3d at 1148–49 (emphases added; quotation marks and citation omitted).

II.     *Plumbers* **Also Confirms That Oak Park's Purpose Is Irrelevant**

*Plumbers* also supports the Coalition's argument that "Oak Park's motive in enacting the Ordinance has nothing to do with whether the Ordinance is preempted by EPCA." ECF 46 at 12. *Plumbers* specifically noted that it should "not be read as suggesting that Appellee's reasons for enacting the challenged laws bring those laws outside of EPCA's preemptive scope," and that "[o]ur holding that the challenged laws are not preempted is not premised, in any way, on the purpose of the challenged laws." 2026 WL 1871692, at *7 n.7. These observations directly undermine Oak Park's argument that its Ordinance escapes preemption because it was motivated by health and safety rather than energy conservation. *See* ECF 35 at 17–20.

III.    *Plumbers* **Rests on the Mistaken Notion That a Categorical Ban on Fossil-Fuel Appliances Does Not Regulate the Quantity of Energy That Appliances Consume**

Why, then, does *Plumbers* hold that EPCA does not preempt laws that "prohibit fossil-fuel-powered appliances"? 2026 WL 1871692, at *2. Because, *Plumbers* insists, such laws "govern via the *type* of energy an appliance consumes by barring the use of fossil-fuel-powered appliances, not the *amount* of energy it consumes." *Id.* at *8 (emphases added). *Plumbers* repeatedly makes this point, asserting that "the challenged laws govern by the *type* of energy consumed by an appliance, not the *amount* of energy an appliance consumes . . . ." *Id.* at *9 (emphases added)); *see also id.* ("[T]here is no equivalency between the type of energy an appliance uses and that appliance's 'energy use.'" (quotation marks and citation omitted)).

Thus, *Plumbers* rests on the notion that banning an entire *type* of energy (here, fossil fuels) is different than regulating the *amount* of energy that appliance uses. But as the Coalition has explained, *see* ECF 28 at 16; ECF 46 at 12, EPCA defines "energy" to mean "electricity, *or fossil fuels*." 42 U.S.C. § 6291(3) (emphasis added). Notably, *Plumbers never even mentions EPCA's definition* of "energy," much less explains how its conclusion is consistent with that definition.

*Plumbers'* reasoning cannot be reconciled with EPCA's definition of "energy." Plugging that statutory definition into EPCA's text means that EPCA preempts regulations concerning "the quantity of [electricity, or fossil fuels]" consumed by covered appliances. 42 U.S.C. § 6291(4). And Oak Park's Ordinance regulates the quantity of fossil fuels consumed by appliances because it prohibits any appliance that uses more than zero fossil fuels—and as the Coalition has explained, "more than zero" is a quantity. *See* ECF 28 at 9–11; ECF 46 at 6–7; *Cal. Restaurant Ass'n v. City of Berkeley*, 89 F.4th 1094, 1102 (9th Cir. 2024) (citing Oxford English Dictionary Online (2022) to note that "'quantity' means 'a property or attribute that can be expressed in numerical terms'").

In sum, *Plumbers* effectively concedes that EPCA *would* preempt a building code that, for example, prohibited installation of gas stoves that consume more than 900 kilo-BTUs of natural gas per year. *See* 10 CFR § 430.32(j)(1)(iii) (setting max annual energy consumption for gas stoves at about 1,770 kilo-BTUs of natural gas per year). And as the Coalition has pointed out, there is no legally significant difference between a regulation that caps fossil-fuel consumption at zero and a regulation that caps fossil-fuel consumption at slightly-more-than-zero: Both regulations "indisputably regulate a 'quantity of [fossil fuels] directly consumed by a consumer product' and are thus preempted by EPCA." ECF 56 at 4 (quoting 42 U.S.C. § 6291(3), (4)).

## CONCLUSION

In short, much of the reasoning of *Plumbers* is consistent with the Coalition's arguments in support of summary judgment. *Plumbers* comes to the wrong conclusion simply because it assumes that a regulation stating that appliances cannot consume *any* fossil fuels is different from limiting appliances to some non-zero amount of fossil fuels. As the Coalition has explained, that assumption is contradicted by the statutory text, dictionary definitions, and common sense.

Dated: July 17, 2026

Respectfully submitted,

**CLEAN ENERGY CHOICE
COALITION, NFP**

By: /s/ *Christine E. Skoczylas*

Christine E. Skoczylas (#6293811)
Alexander J. Bandza (#6312301)
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606
(312) 537-1313
christine.skoczylas@btlaw.com
abandza@btlaw.com

Kian James Hudson
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204
(317) 229-3111
kian.hudson@btlaw.com

*Attorneys for Plaintiff*

5

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on July 17, 2026, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ *Christine E. Skoczylas*
Christine E. Skoczylas