**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CLEAN ENERGY CHOICE COALITION, NFP | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:25-cv-04353<br>Hon. Franklin U. Valderrama |
| VILLAGE OF OAK PARK, ILLINOIS, | ) | |
| Defendant. | ) | |

**NOTICE OF APPEAL**

Notice is hereby given that Plaintiff Clean Energy Choice Coalition, NFP hereby appeals to the United States Court of Appeals for the Seventh Circuit from the Court's Order Denying Plaintiff's Motion for Summary Judgment and Granting Defendant's Cross-Motion for Summary Judgment, ECF 64, entered on July 30, 2026, and the Court's Entry of Final Judgment, ECF 65, that incorporated that ruling and which was entered on July 30, 2026.

Dated: August 19, 2026

Respectfully submitted,

**CLEAN ENERGY CHOICE COALITION, NFP**

By: *<u>/s/ Christine E. Skoczylas</u>*

Christine E. Skoczylas (#6293811)
Alexander J. Bandza (#6312301)
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606
(312) 537-1313
christine.skoczylas@btlaw.com
abandza@btlaw.com

Kian James Hudson
BARNES & THORNBURG LLP

11 South Meridian Street
Indianapolis, IN 46204
(317) 229-3111
kian.hudson@btlaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 19, 2026, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ Christine E. Skoczylas*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CLEAN ENERGY CHOICE COALITION, NFP | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:25-cv-04353 |
| v. | ) | Hon. Franklin U. Valderrama |
| | ) | |
| VILLAGE OF OAK PARK, ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

**DOCKETING STATEMENT**

Plaintiff-Appellant Clean Energy Choice Coalition, NFP ("the Coalition") submits the following Docketing Statement pursuant to Seventh Circuit Rules 3(c)(1) and 28(a):

1. The district court had original jurisdiction over this case pursuant to 28 U.S.C. § 1331. This case arises under the Constitution and laws of the United States because the Coalition's complaint alleges that the Defendant Village of Oak Park ("Oak Park") ordinance banning natural-gas appliances in new buildings is preempted by the provisions of the Energy Policy and Conservation Act of 1975 (EPCA) expressly preempting state and local regulations "concerning the energy efficiency [or] energy use" of certain products. 42 U.S.C. §§ 6297(c), 6316(b).

2. The Coalition is a nonprofit corporation incorporated in Illinois with its principal and only place of business in Illinois. Oak Park is a political subdivision of Illinois.

3. Appellate jurisdiction exists under 28 U.S.C. 1291 because this is an appeal of an Order Denying Plaintiff's Motion for Summary Judgment and Granting Defendant's Cross-Motion for Summary Judgment, ECF 64, entered on July 30, 2026, and the district

court's Entry of Final Judgment, ECF 65, that incorporated that ruling and which was entered on July 30, 2026.

**4.** No motion has been filed that tolls the time within which to file an appeal.

**5.** On August 19, 2026, the Coalition filed a notice of appeal in the district court. ECF 66.

**6.** This is not an appeal from a decision of a magistrate judge.

**7.** There are no prior or related proceedings in the district court or the Seventh Circuit, but there are cases outside the Seventh Circuit raising the same preemption issue, including:

a. *Cal. Restaurant Ass'n v. City of Berkeley*, 21-16278 (9th Cir.), decided January 2, 2024 (89 F.4th 1094 (9th Cir. 2024))

b. *Ass'n of Contracting Plumbers of the City of New York, Inc. v. City of New York*, 25-977 (2d Cir.), decided June 30, 2026 (180 F.4th 434 (2d Cir. 2026))

c. *Nat'l Ass'n. of Home Builders v. Montgomery County*, No. 26-1449 (4th Cir.)

d. *Md. Bldg. Indus. Ass'n, Inc. v. McIlwain*, No. 26-1552 (4th Cir.)

e. *Nat'l Ass'n of Home Builders v. District of Columbia*, No. 26-7050 (D.C. Cir.)

**8.** No party to the litigation is an individual suing or being sued in their official capacity.

Dated: August 19, 2026

Respectfully submitted,

**CLEAN ENERGY CHOICE COALITION, NFP**

By: */s/ Christine E. Skoczylas*

Christine E. Skoczylas (#6293811)
Alexander J. Bandza (#6312301)
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606
(312) 537-1313
christine.skoczylas@btlaw.com
abandza@btlaw.com

Kian James Hudson
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204
(317) 229-3111
kian.hudson@btlaw.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on August 19, 2026, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ Christine E. Skoczylas*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CLEAN ENERGY CHOICE COALITION, NFP<br><br>Plaintiff,<br><br>v.<br><br>VILLAGE OF OAK PARK, ILLINOIS,<br><br>Defendant. | No. 25-cv-04353<br>Judge Franklin U. Valderrama |

**MEMORANDUM OPINION AND ORDER**

The Energy Policy and Conservation Act of 1975 (EPCA) prohibits state and local regulations "concerning the energy efficiency [or] energy use" of certain products. 42 U.S.C. § 6297(c). The Village of Oak Park (the Village), as part of its effort to reduce its greenhouse emissions, enacted an ordinance which provides that, as to all "new buildings," "[t]he source of energy for the building shall be all electric and the source of energy shall not be fossil fuels." Oak Park Vill. Code § 7-1-2 at P301.1 (the Ordinance); R. 1, Compl.[1] Plaintiff Clean Energy Choice Coalition, NFP (Clean Energy), an assortment of groups whose members seek to preserve their interests in providing natural gas services and appliances to consumers, sued the Village asserting that the Ordinance is preempted by EPCA. Before the Court are Clean Energy and the Village's cross-motions for summary judgment. R. 27, Pl.'s Mot.

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

Summ. J.; R. 34, Def.'s Cx-Mot. Summ. J. For the reasons below, the Court denies Clean Energy's motion and grants the Village's motion for summary judgment.

**Background**

In deciding cross-motions for summary judgment, the Court views the facts in the light most favorable to the respective non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). So, when the Court evaluates Clean Energy's motion for summary judgment, the Village gets the benefit of reasonable inferences; conversely, when evaluating the Village's motion, the Court gives Clean Energy the benefit of the doubt. On summary judgment, the Court assumes the truth of the facts presented by the parties, but does not vouch for them. *See Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).

**I. The Ordinance**

In August 2022 the Village adopted Climate Ready Oak Park (CROP), a comprehensive planning framework under which the Village plans to reduce its greenhouse gas emissions and protect its residents' health, safety, and welfare. DSOF[2] ¶ 2, 5. Changes to the Village's building code are a key step in that plan, because the Village's older building stock runs largely on fossil fuels. *Id.* ¶ 2. After a

[2]Citations to the Parties' Local Rule 56.1 Statements of Material Facts are identified as follows: "PSOF" for Clean Energy's Statement of Material Facts (R. 29); "Def.'s Resp. PSOF" for the Village's Response to Clean Energy's Statement of Material Facts (R. 35); "DSOF" for the Village's Statement of Material Facts (R. 34-1); and "Pl.'s Resp DSOF" for Clean Energy's Response to the Village's Statement of Material Facts. (R. 47).

series of meetings in June 2023, the Village amended its building and residential codes for new construction (the Ordinance). *Id.* ¶¶ 10–11.

Under the Ordinance, most new buildings and residences in the Village are required to use electricity as their "source of energy" and may not combust "fossil fuels" indoors. Oak Park Vill. Code § 7-1-2 at P301.1; § 7-6-2 at X301.1. The purpose of this prohibition is "to reduce production of greenhouse gases." *Id.* § 7-1-2 at P101.2; § 7-6-2 at X101.2. In addition to its general prohibition on fossil fuels, the Ordinance prescribes several requirements for appliances installed in new buildings. PSOF ¶ 7. For example, it amends the Building Code to require all cooktops to be "electric induction types," all ovens to be "electric types," and "energy for any clothes dryer shall be provided by an electric pump." Oak Park Vill. Code § 7-1-2 at P30; § 7-6-2 at X301.1(6). The Ordinance also prohibits "directly piped exterior gas fire pits and gas cooking grills whose source of energy are fossil fuels." *Id.* § 7-1-2 P301.1(10); § 7-6-2 at X301.1(8). The Ordinance went into effect on January 1, 2024. PSOF ¶ 8.

## II. EPCA

Congress enacted EPCA in 1975, "in the aftermath of the oil embargo imposed against the United States in 1973 and 1974 by certain petroleum-producing countries." *Nat. Res. Def. Council, Inc., v. Herrington*, 768 F.2d 1355, 1364 (D.C. Cir. 1985). "EPCA was designed, in part, to reduce the United States' domestic energy consumption through the operation of specific voluntary and mandatory energy conservation programs." *Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n.*, 410 F.3d 492, 498–99 (9th Cir. 2005) (citation

omitted). EPCA sought to achieve this goal by authorizing energy efficiency standards and prescribing labeling requirements for "major home appliances and certain other consumer products," in the hope that "better informed consumers and voluntary efforts by manufacturers would make energy efficiency standards unnecessary." *Id.* at 499.

In 1978 Congress amended EPCA with the National Energy Conservation and Policy Act (NECPA), which "required the [Department of Energy] to prescribe minimum energy efficiency standards for thirteen covered products," namely kitchen ranges, ovens clothes dryers and furnaces. *Air Conditioning & Refrigeration Inst.*, 410 F.3d at 499. NECPA allowed states to "prescribe regulations more stringent than federal regulations *only if* the Secretary [of Energy] found there was a significant state or local interest to justify the state's regulation" and the regulation "would not unduly burden interstate commerce." *Id.* (emphasis in original). The Department of Energy (DOE), however, concluded in 1982 that "establishing minimum energy efficiency standards for the relevant appliances would not result in significant energy conservation and would not be economically justified," thus "the DOE determined no efficiency standards were required under NECPA." *Id.* While adopting this policy, the DOE also initiated a "general policy of granting petitions from States requesting waivers from preemption." *Id.* This resulted in a "growing patchwork of differing State regulation" that complicated the "design, production, and marketing of appliances." *Id.* at 500 (cleaned up). So, Congress passed the National Appliance Energy Conservation Act of 1987 (NAECA), which established uniform federal energy

standards for residential appliances. *Id.* at 499–500. NAECA also made changes to the preemption clause and made it more difficult for states to obtain a waiver. *Id.*

EPCA's current preemption provision for consumer products provides in relevant part:

> [E]ffective on the effective date of an energy conservation standard established in or prescribed under section 6295 of this title for any covered [consumer] product, no State regulation concerning the energy efficiency, energy use, or water use of such covered product shall be effective with respect to such product[.]

42 U.S.C. § 6297(c).

"Energy" is defined as "electricity, or fossil fuels." 42 U.S.C. § 6291(3). "Energy use" means "the quantity of energy directly consumed by a consumer product at point of use, determined in accordance with test procedures under section 6293 of this title." *Id.* § 6291(4). "Energy efficiency" means "the ratio of the useful output of services from a consumer product to the energy use of such product, determined in accordance with test procedures under section 6293 of this title." *Id.* § 6291(5). "Energy conservation standard" is defined as "a performance standard which prescribes a minimum level of energy efficiency or a maximum quantity of energy use . . . determined in accordance with test procedures prescribed under section 6293 of this title; or . . . a design requirement for" certain covered consumer products. *Id.* § 6291(6).

## III. Clean Energy

Clean Energy is an Illinois non-profit organization seeking to guarantee that energy consumers in the Chicagoland area and the State of Illinois have access to a

wide range of established technologies and energy alternatives, including natural gas. PSOF ¶ 1. Its members include, among others, the International Union of Operating Engineers Local 150, AFL-CIO (Local 150); National Association of Homebuilders (NAHB); and NPL Construction Co. (NPL). *Id.* ¶ 12. Both Local 150 and NAHB have thousands of members, including construction workers and homebuilders, some with specialized training on natural gas distribution and maintenance processes. *Id.* ¶¶ 13–15, 18. NPL installs and restores natural gas utilities in Oak Park and surrounding communities. *Id.* ¶ 21.

According to Clean Energy, the Ordinance has led to increased costs, which in turn deny coalition members potential new customers who would otherwise choose to use natural gas. PSOF ¶ 23. The Ordinance eliminated significant work opportunities for Local 150 members, who have specialized training in this field.[3] *Id.* ¶¶ 15–16. Since the Ordinance's enactment, demand for NPL's services has declined in the Village and directly reduced its revenue.[4] PSOF ¶ 22. Clean Energy seeks a declaratory judgment and permanent injunction prohibiting enforcement of the Ordinance as preempted by EPCA. Compl. ¶¶ 75–76. Predictably, the Village sees things differently and insists that EPCA's preemption clause, the meaning of its technical terms, and the broader statutory framework all make clear that EPCA only

---

[3]The Village disputes these allegations. The Village argues that other work opportunities exist for Local 150 members. Def's Resp. PSOF ¶ 16. The Court need not resolve this factual dispute, as it is immaterial to resolution of the parties' cross-motions.

[4]The Village objects to this allegation on the basis that Clean Energy has not provided adequate evidentiary support. Def's Resp. PSOF ¶ 22. As above, resolution of this factual dispute is unnecessary for resolution of the cross-motions.

preempts local regulations that prescribe the equivalent of a federal energy conservation standard for a covered product's characteristics as manufactured. R. 35, Def.'s Resp./Cx-Memo. at 6.

## IV. Amici Curiae

Amici Curiae (Amici) are four organizations with interests in preserving the public health and climate benefits of the Village's all-electric new construction ordinance and similar policies beyond the Village. R. 37, Amici Memo. at 1. Amici argue that Clean Energy's expansive reading of EPCA's preemptive reach would completely negate the Village's firmly established authority to reduce air pollution that harms the public health, pursuant to its valid police powers. *Id.* at 2. According to Amici, when analyzing express preemption provisions, the Seventh Circuit applies a presumption against preemption in areas of traditional state regulation. *Id.* at 12 (citing *Laborers' Pension Fund v. Miscevic*, 880 F.3d 927, 931 (7th Cir. 2018)). This presumption applies here, assert Amici, because the Ordinance is a valid exercise of the Village's traditional police power to regulate public health and safety. *Id.* at 14 (citing *Sutker v. Ill. State Dental Soc.*, 808 F.2d 632, 635-36 (7th Cir. 1986)). Amici argue that even though EPCA's plain language, statutory structure, and legislative history clearly show the Ordinance is not preempted, the Seventh Circuit's presumption against preemption creates an even higher bar —which the Village fails to clear. *Id.*

The parties' fully briefed cross motions for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure are before the Court.[5]

**Legal Standard**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *See Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

---

[5]The Court heard oral arguments on the respective motions.

## Analysis

### I. Preemption

Given that the parties' cross-motions center on whether the Ordinance is preempted by EPCA, the Court starts with the law of preemption. The Supremacy Clause of the U.S. Constitution provides that the Constitution and laws of the United States shall be the "supreme law of the land." U.S. Const. art. VI, cl.2. The Supremacy clause "invalidates state laws that interfere with, or are contrary to, federal law." *Nelson v. Great Lakes Educ. Loan Servs. Inc.*, 928 F.3d 639, 646 (7th Cir. 2019) (quoting *Hillsborough County v. Automated Medical Labs., Inc.*, 471 U.S. 707, 712–713 (1985)). There are three types of preemption: express, field, and conflict. *Id.* At issue here is express preemption, as Clean Energy argues that the Ordinance is expressly preempted by EPCA.

Express preemption exists when Congress clearly declares its intention to preempt state law. *See C.Y. Wholesale, Inc., v. Holcomb,* 965 F.3d 541, 546 (7th Cir. 2020). "In all pre-emption cases, and particularly in those in which Congress has legislated in a field in which the States have traditionally occupied, [courts] must start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (cleaned up). "Express preemption presents a question of statutory interpretation." *Nelson,* 928 F.3d at 647. The "purpose of Congress is the ultimate touchstone in every pre-emption case."

*Medtronic, Inc., v. Lohr*, 518 U.S. 470, 485 (1996) (citation omitted). Congressional intent, of course is "primarily [] discerned from the language of the pre-emption statute and the statutory framework surrounding it." *Id.* (citation omitted). Also relevant "is the structure and purpose of the statute as a whole." *Id.* (citation omitted).

When it comes to the presumption against preemption, the Court agrees with Clean Energy that the presumption should not apply here. The Village does not dispute this principle, but Amici do. *See* R. 48, Def.'s Cx-Reply at 7 n.1; Amici Memo. at 12–14. The Supreme Court and the Seventh Circuit have held that courts should "not invoke any presumption against preemption" in express preemption cases and should "instead 'focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.'" *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (quoting *Chamber of Commerce v. Whiting*, 563 U.S. 582, 594 (2011)); *see also Planned Parenthood of Indiana, Inc. v. Commr. of Indiana State Dept. Health*, 699 F.3d 962, 984 (7th Cir. 2012). The Court therefore disagrees with Amici that a presumption against preemption should apply here.

## II. The Competing Interpretations

### *a. Clean Energy's Position and* California Restaurant Association[6]

Clean Energy argues that under the plain text of EPCA, the Ordinance is preempted. Pl.'s Memo. Summ. J. at 8. Clean Energy points out that EPCA expressly preempts any "State regulation concerning . . . the energy use of" gas appliances. *Id.*

[6]*California Rest. Ass'n v. City of Berkely*, 89 F. 4th 1094 (9th Cir. 2024).

(quoting 42 U.S.C. §§ 6297(c)). The statutory definitions of key terms, according to Clean Energy, confirm it applies to natural gas bans, such as the Ordinance. *Id*. Clean Energy notes that the Ordinance prohibits any appliance that uses more than zero fossil fuels, which it maintains is "indisputably a quantity." *Id*. at 9 (citation omitted). In short, Clean Energy argues that EPCA preempts state regulations concerning energy use and energy use is defined as a quantity of energy consumed by a consumer. Therefore, the Ordinance's requirement that the "quantity" of energy made by fossil fuels be zero is preempted. In support of this interpretation, Clean Energy relies heavily on *California Rest. Ass'n v. City of Berkely*, 89 F. 4th 1094 (9th Cir. 2024).

In *California Rest. Ass'n*, the plaintiffs challenged a municipal regulation prohibiting the installation of natural gas piping within newly constructed buildings. 89 F. 4th at 1098. The Ninth Circuit held that EPCA preempted the ordinance, reasoning that because "EPCA is concerned with the end-user's ability to *use* installed covered products at their intended final destinations," the ordinance impermissibly regulated "energy use" by setting the quantity to be used in new construction at 'zero.'" *Id*. at 1101–02 (emphasis in original). From the majority's point of view, "a building code that prohibits consumers from using natural gas–powered appliances in newly constructed buildings necessarily regulates the quantity of energy directly consumed by the appliances at point of use," which EPCA expressly prohibits. *Id*. at 1102 (cleaned up).

In dissent, Judge Friedland accused the majority of misinterpreting EPCA's key terms "to have colloquial meanings instead of the technical meanings required

by established canons of statutory interpretation." *California Rest. Ass'n*, 89 F. 4th at 1120. The way Judge Friedland saw it, EPCA from its inception was designed to set "uniform appliance efficiency standards" for covered products that proceeded to market, and not to create a "consumer right to use" any covered appliance. *Id.* at 1121. According to Judge Friedland, EPCA is a "technical statute" whose words must be interpreted in accordance with "specialized meanings." *Id.* The critical terms "energy use" and "point of use" must be given their technical and industry-relevant meanings. *Id.* at 1121–23. "Energy use," for example, is a technical term meant to encompass "the typical amount of energy consumed per use cycle or in a given amount of time while the appliance is in operation." *Id.* "Energy use" is a fixed performance standard that "aims to approximate the *typical* energy use of an appliance during operation, the measure does not depend on any given consumer's *actual* use." *Id.* (emphases in original).

Similarly, "point of use," explained Judge Friedland, has a "well-established technical meaning" and does not refer to the place where an appliance is used. *California Rest. Ass'n*, 89 F. 4th at 1124–25. Rather, the technical meaning of the term refers to a way of measuring energy consumption. *Id.* "Point of use" measures "site energy," the energy that is directly consumed by the appliance from the pipe or outlet, and Congress intended for its inclusion to "give a technical instruction" to the DOE and manufacturers upstream in the supply chain. *Id.* Point of use does not expand EPCA's scope to govern the end-user's ability to *use* installed covered products at their intended final destinations. *Id.* Rather, it fits neatly into the statutory

definition of "energy use," which refers to a covered product's characteristics as manufactured.

*b. The Village's Position and* Plumbers[7]

The Village argues that EPCA preempts only those local regulations that create the equivalent of a federal energy conservation standard for a covered product. Def.'s Resp./Cx-Memo. at 6. Because the Ordinance, from the Village's perspective, does not, the Ordinance is not preempted. *Id.* Clean Energy's argument, notes the Village, is premised on "regulation concerning . . . energy use." *Id.* at 7. But "energy use" is a representative measure of how much energy a product typically consumes per use cycle, or over a given period, measured under controlled conditions simulating actual use. *Id.* The Village maintains that energy use is a design characteristic of a product, and a function of how it is manufactured, supplying a fixed value to estimate and describe its performance. *Id.* The Village contends that although the Ordinance restricts, in some circumstances, what appliances new buildings may use, it does not set energy conservation standards and imposes no design requirements. *Id.* at 4–5. In support of this interpretation, the Village relies on *Ass'n of Contracting Plumbers of the City of New York Inc v. City of New York*, 180 F.4th 434 (2d Cir. 2026)[8] (*Plumbers*).

[7]*Ass'n of Contracting Plumbers of the City of New York, Inc v. City of New York*, 180 F.4th 434 (2d Cir. 2026).

[8]*Plumbers* was issued after the parties concluded their briefing and oral argument. The Village cited *Plumbers* as supplemental authority (R. 58) and Clean Energy filed a response (R. 60). In its response/cross-motion, the Village relied on one of the two district court cases the Second Circuit affirmed in *Plumbers*. *See* Def.'s Resp./Cx-Memo. (citing *Ass'n of*

In *Plumbers*, the City of New York and New York State enacted laws that, in effect, prohibited the use of fossil fueled appliances in newly constructed residential buildings. 180 F.4th at 436. Two separate suits were filed, one against the City of New York and one against New York State. The plaintiffs, trade associations and unions, alleged that the laws were preempted by EPCA. *Id*. at 437. The district court in the case against the City granted the City's motion to dismiss; the district court in the case against the State of New York granted summary judgment in favor of the State. Both courts found that EPCA did not preempt the laws, as the laws did not concern the energy use of a covered product. In doing so, the courts declined to adopt the Ninth Circuit's definition of "energy use," and instead adopted Judge Friedland's interpretation of EPCA. *Id*. The Second Circuit affirmed.

The Second Circuit first determined the meaning of "energy use" as used in EPCA. *Plumbers*, 180 F.4th at 439-40. There, as in this case, the plaintiffs argued that the "energy use" of a covered product was "the amount of energy consumed by covered products in the hands of the consumer." *Id*. at 439. The court rejected that interpretation of "energy use." The court noted that manufacturers ascertain an appliance's energy use by using test procedures, the results of which are determinative. *Id*. And those test procedures, from the court's point of view, "are designed to *replicate* the appliance's average use, meaning the tests performed in a controlled setting, not at the appliance's ultimate destination in the hands of consumers." *Id*. (emphasis in original). The court thus found "energy use" to mean "a

---

*Contracting Plumbers of City of New York, Inc. v. City of New York*, 2025 WL 843619 (S.D.N.Y. Mar. 18, 2025)).

standardized, fixed measure assigned to a product before it reaches consumers," so "once an appliance has been sold, nothing a consumer does with the appliance changes that appliance's energy use." *Id*. Therefore, reasoned the court, "a regulation that effectively bars the use of a covered appliance by certain consumers, like the challenged laws, has little to do with that appliance's 'energy use.'" *Id*. In short, "'energy use,' as that term is used in the preemption provision, has no effect whatsoever on that appliance's coverage under the challenged laws." *Id*. at 445.

Next, the court looked to the statutory context, meaning the "structure and purpose of the Act." *Plumbers*, 180 F.4th at 440. The court concluded that the statutory context confirmed that "energy use" "refers to a metric determined before an appliance ever reaches consumers, not the energy that appliance uses in the hands of consumers." *Id*. at 441.

The court then turned to the plaintiffs' argument—an argument also advanced by Clean Energy here—that Congress intended to preempt any regulation "concerning" energy use of a covered product under EPCA. *Plumbers*, 180 F.4th at 441-42. Not so, according to the court, which found that "phrases such as 'related to,' and 'concerning' do not endlessly stretch the scope of preemption provisions." *Id*. Based on the definition of energy use, the law neither directly regulates energy use of any covered product, nor does it *concern* the energy use of a covered product. *Id*. at 444-46.

The plaintiffs in *Plumbers* further argued that EPCA's exemptions for certain building codes confirm that preemption applies even if the state or local ordinance

does not regulate appliances directly. 180 F.4th at 447-48. The Second Circuit disagreed that the building code exemptions undermined its interpretation of the preemption provision as applied to the challenged laws. *Id.* For starters, observed the court, "for the exemption to make any sense, the kind of regulation it describes must be preempted in the first place; otherwise, the exception would do no work." *Id.* at 447. The building code regulations were "not the kind of performance standards that Congress was most directly concerned with," but nonetheless had "an impermissible relationship to EPCA's subject matter" because they achieved the goal of regulating the performances of appliances in buildings and also directly "implicate[d] Congress's objectives in maintaining uniform energy conservation standards." *Id.* at 447-48. Therefore, the court found that its interpretation of the preemption provision internally consistent with the building code exemption, and indeed, found that the exemption provision further supported its interpretation. *Id.*

The court also found its interpretation supported by the preemption provision's history, as "it is clear that the challenged laws would not be preempted under the prior versions of [EPCA's] preemption provision," and further amendments "illustrate[] that Congress's revisions to the preemption provision were intended to reinforce the limits of its scope, not broaden them." *Plumbers*, 180 F.4th at 448-49.

Lastly, the Second Circuit disagreed with *California Restaurant Association.* From the court's point of view, the Ninth Circuit's emphasis on "point of use" ignored the second half of the statutory definition of "energy use," which references point of use as "determined in accordance with test procedures under section 6293." *Plumbers*,

180 F.4th at 451. The court found it "simply incompatible" that the statutory definition of "energy use" and reliance on manufacturer test procedures to determine usage would refer to energy an appliance consumes "at its intended final destination." *Id.* (citation omitted).

While the Second Circuit is the latest court to have addressed the issue of preemption by EPCA, it is not the only court to have concluded that EPCA does not preempt state or local ordinances that prohibit the use of fossil fuels such as natural gas and heating fuel in newly constructed residential buildings. *See Nat'l Ass'n of Home Builders of the States v. District of Columbia*, 2026 WL 837674 (D.D.C. Mar. 26, 2026); *Nat'l Ass'n of Home Builders of the U.S. v. Montgomery Cnty*, 2026 WL 817322 (D. Md. Mar. 25, 2026).

## III. EPCA and the Ordinance

With these considerations in mind, the Court turns to the Ordinance and EPCA. The Court starts with the text of EPCA's preemption clause. The preemption clause provides that "for any covered product, no State regulation concerning the energy efficiency, energy use, or water use of such covered product shall be effective with respect to such product." 42 U.S.C. § 6297(c). Applying the tools of statutory construction, the Court finds that EPCA does not preempt the Ordinance.

"Statutory construction . . . is a holistic endeavor." *United Sav. Ass'n of Tex. v. Timers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). When interpreting a statute, courts begin with the language of the statute, "giving the words used their ordinary meaning." *Artis v. District of Columbia*, 583 U.S. 71, 83 (2018) (citation

omitted); *see also Schneider Nat'l Leasing, Inc. v. United States*, 11 F.4th 548, 554, 559 (7th Cir. 2021) (citations omitted). As the Supreme Court has explained, "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 441 (2019) (citation omitted). In interpreting an express preemption clause, the court must "identify the domain expressly pre-empted" by the statute. *Nelson,* 928 F.3d at 647 (citation omitted).

The Court begins with the term "energy use." "When a statute includes an explicit definition of a term, a court must follow that definition, even if it varies from a term's ordinary meaning." *Van Buren v. United States*, 593 U.S. 374, 387 (2021) (citation omitted) (cleaned up). Recall that EPCA defines "energy use" as "the quantity of energy directly consumed by a consumer product at point of use, determined in accordance with test procedures under section 6293 of this title." 42 U.S.C. § 6291(4). Section 6293 requires that such test procedures be "reasonably designed to produce test results which measure [the] . . . energy use . . . of a covered product during a representative average use cycle or period of use." 42 U.S.C. § 6293(b)(3). Clean Energy maintains that EPCA preempts any regulation of the quantity of energy that a gas appliance consumes. Since the Ordinance bans the use of gas appliances, Clean Energy argues it effectively sets the appliance's consumption to zero, and as such, is preempted. The Village, on the other hand, insists that EPCA preempts energy conservation standards that compete with federal standards, but does not preempt local laws that have nothing to do with energy conservation, such

as the Ordinance. The Court finds that the Village has the better of the argument and in doing so, joins the courts who have declined to adopt Clean Energy's interpretation of "energy use."

The reasoning in *Plumbers* is applicable and persuasive, and the Court agrees with the Second Circuit and the Village that "energy use" in EPCA refers to a predetermined value that is assigned to a product before it reaches consumers. This definition is supported by the statute's explicit direction that "energy use" be determined in accordance with test procedures under section 6293. 42 U.S.C. § 6291(4). The test procedures themselves are designed to produce test results measuring "a representative *average use cycle or period of use*." 42 U.S.C. § 6293 (emphasis added). "Energy use" as preempted in EPCA is thus unimpacted by the actual energy an appliance consumes in the hands of consumers. Whether that use is zero is irrelevant under the statute. Because the Ordinance here regulates the types of energy or fuel that covered appliances may use in certain buildings, rather than establishing or affecting the appliances' federally regulated energy-efficiency or energy-use performance standards, the Ordinance does not "concern" energy use under EPCA. The Court further finds that the Ordinance does not create the type of conflicting product standards or burdens on manufacturers that EPCA's preemption provision was intended to prevent and therefore falls outside the statute's preemptive scope.

And, like the Second Circuit in *Plumbers*, the Court finds that EPCA's building code exemption supports the Court's reading of its preemption provision. The

provision states that "a regulation or other requirement contained in a State or local building code for new construction concerning the energy efficiency or energy use of [that] covered [consumer] product" is not preempted if seven requirements are met. 42 U.S.C. § 6297(f)(3). It is important to note that the regulations covered by the exemption are different from the kind of energy conservation standards that primarily concerned Congress—the regulations covered by the building code exemption are building-wide and operate through incentives. *See Plumbers*, 180 F.4th at 447. Regardless, as other courts have noted, the "legislative history of the building code exception to preemption confirms that Congress wanted to ensure that state building codes could not frustrate national uniformity in appliance standards by requiring the installation of products whose efficiencies exceeded federal standards." *Maryland Bldg. Indus. Ass'n, Inc. v. McIlwain*, 828 F. Supp. 3d 617, 637 (D. Md. 2026). The building code exemption illustrates that Congress intended to preempt regulations that mandate installation of appliances with energy efficiency exceeding predetermined federal standards. This is in line with the Court's interpretation of EPCA's "energy use": a predetermined value that is assigned to a product before it reaches consumers. Regulations that require the use of appliances with energy efficiencies exceeding federal standards are preempted. The Ordinance is not one such regulation.

## Conclusion

For the foregoing reasons, the Court finds that the Ordinance is not preempted under EPCA. Accordingly, the Court denies Plaintiff's motion for summary judgment [R. 27] and grants Defendant's cross-motion for summary judgment [R. 34].

Dated: July 30, 2026

United States District Judge
Franklin U. Valderrama

# IN THE UNITED STATES DISTRICT COURT
# FOR THE
# NORTHERN DISTRICT OF ILLINOIS

Clean Energy Choice Coalition, NFP

Plaintiff(s),

v.

Village of Oak Park, Illinois

Defendant(s).

Case No. 1:25-cv-04353
Judge Franklin U. Valderrama

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐ in favor of plaintiff(s)
and against defendant(s)
in the amount of $

which ☐ includes pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☑ in favor of defendant(s) Village of Oak Park, Illinois
and against plaintiff(s) Clean Energy Choice Coalition, NFP

Defendant(s) shall recover costs from plaintiff(s).

---

☑ other: The Court denies Plaintiff's motion for summary judgment [27] and grants Defendant's cross-motion for summary judgment [34]. Civil case terminated.

---

This action was *(check one)*:

☐ tried by a jury with Judge presiding, and the jury has rendered a verdict.
☐ tried by Judge without a jury and the above decision was reached.
☑ decided by Judge Franklin U. Valderrama on a motion for summary judgment.

Date: 7/30/2026

Thomas G. Bruton, Clerk of Court

Jonathan Martinez , Deputy Clerk

APPEAL,GILBERT,TERMED

# United States District Court
# Northern District of Illinois - CM/ECF NextGen 1.9 (rev. 1.9) (Chicago)
# CIVIL DOCKET FOR CASE #: 1:25-cv-04353
# Internal Use Only

Clean Energy Choice Coalition, NFP v. Village of Oak Park, Illinois
Assigned to: Honorable Franklin U. Valderrama
Cause: 42:4332 Environmental Policy - Coop of Agency Reports

Date Filed: 04/22/2025
Date Terminated: 07/30/2026
Jury Demand: None
Nature of Suit: 950 Constitutional - State Statute
Jurisdiction: Federal Question

**<u>Plaintiff</u>**

**Clean Energy Choice Coalition, NFP** represented by

**Christine Elizabeth Skoczylas**
Barnes & Thornburg LLP
One North Wacker Drive
Suite 4400
Chicago, IL 60606
312 214 5613
Fax: Active
Email: christine.skoczylas@btlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander J. Bandza**
Barnes & Thornburg LLP
One N. Wacker Dr.
Ste. #4400
Chicago, IL 60606
708-404-7061
Email: abandza@btlaw.com
*ATTORNEY TO BE NOTICED*

**Kian James Hudson**
Barnes & Thornburg Llp
11 S Meridian St
Indianapolis, IN 46204
(317) 229-3111
Fax: Not a member
Email: kian.hudson@btlaw.com
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**Village of Oak Park, Illinois** represented by

**Gavin Michael Kearney**
Earthjustice
311 South Wacker Drive
Suite 1400

Chicago, IL 60606
773-828-0816
Email: gkearney@earthjustice.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Oberleiton R. Timothy**
Earthjustice
1250 I St. NW
Fourth Floor
Washington, DC 20005
202-667-4500
Email: toberleiton@earthjustice.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tony Salvatore Fioretti**
Village of Oak Park
Law Department
123 Madison Street
Oak Park, IL 60302
708-358-5666
Fax: Active
Email: tony.fioretti@oak-park.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dror Ladin**
ACLU
125 Broad St.
18th Fl
New York, NY 10004
(617) 835-5157
Fax: Pro Hac Vice
Email: dladin@earthjustice.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gail Lynne Reich**
Elrod Friedman, LLP
350 North Clark Street
Ste Second Floor
Chicago, IL 60654
872-299-3003
Email: gail.reich@elrodfriedman.com
*ATTORNEY TO BE NOTICED*

**Gregory T. Smith**
Elrod Friedman LLP
350 N. Clark St., Second Floor
Suite 450
60654
Chicago, IL 60654

312-528-5201
Email: gregory.smith@elrodfriedman.com
*TERMINATED: 07/21/2026*

**Linnet Rose Davis-Stermitz**
Earthjustice
810 3rd Ave
#610
Seattle, WA 98103
(206) 343-7340
Fax: Pro Hac Vice
Email: ldavisstermitz@earthjustice.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas Joseph Cmar**
Earthjustice
311 S. Wacker Dr., Ste. 1400
Chicago, OH 60606
(312) 257-9338
Fax: Not a member
Email: tcmar@earthjustice.org
*ATTORNEY TO BE NOTICED*

**Amicus**

**Sierra Club** represented by **James Arlo Dennison**
Sierra Club Environmental Law Program
1650 38th St., Ste. 103W
Boulder, CO 80301
(435) 232-5784
Fax: Not a member
Email: jim.dennison@sierraclub.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sari Amiel**
Sierra Club Environmental Law Program
50 F. St. NW, Eighth Floor
Washington, DC 20001
(301) 807-2223
Fax: Not a member
Email: sari.amiel@sierraclub.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Oak Park Climate Action Network** represented by **James Arlo Dennison**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sari Amiel**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Chicago Environmental Justice Network** represented by **Robert Adam Weinstock**
Bluhm Legal Clinic
Environmental Advocacy Center
375 E. Chicago Ave
Chicago, IL 60611
312-503-1457
Email: robert.weinstock@law.northwestern.edu
*ATTORNEY TO BE NOTICED*

**Amicus**

**Respiratory Health Association** represented by **Robert Adam Weinstock**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/22/2025 | 1 | COMPLAINT *FOR DECLARATORY AND INJUNCTIVE RELIEF* filed by Clean Energy Choice Coalition, NFP; Filing fee $ 405, receipt number AILNDC-23380011. (Attachments: # 1 Civil Cover Sheet Civil Cover Sheet)(Skoczylas, Christine) (Entered: 04/22/2025) |
| 04/22/2025 | 2 | ATTORNEY Appearance for Plaintiff Clean Energy Choice Coalition, NFP by Christine Elizabeth Skoczylas (Skoczylas, Christine) (Entered: 04/22/2025) |
| 04/22/2025 | 3 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Clean Energy Choice Coalition, NFP (Skoczylas, Christine) (Entered: 04/22/2025) |
| 04/22/2025 | 4 | ATTORNEY Appearance for Plaintiff Clean Energy Choice Coalition, NFP by Alexander J. Bandza (Bandza, Alexander) (Entered: 04/22/2025) |
| 04/22/2025 | 5 | SUMMONS Submitted (Court Participant) for defendant(s) Village of Oak Park, Illinois, by Plaintiff Clean Energy Choice Coalition, NFP (Skoczylas, Christine) (Entered: 04/22/2025) |
| 04/22/2025 | | CASE ASSIGNED to the Honorable Franklin U. Valderrama. Designated as Magistrate Judge the Honorable Jeffrey T. Gilbert. Case assignment: Random assignment. (Civil Category 2). (gmm) (Entered: 04/22/2025) |
| 04/22/2025 | | CLERK'S NOTICE: Pursuant to Local Rule 73.1(b), a United States Magistrate Judge of this court is available to conduct all proceedings in this civil action. If all parties consent to have the currently assigned United States Magistrate Judge conduct all proceedings in this case, including trial, the entry of final judgment, and all post-trial proceedings, all parties must sign their names on the attached Consent To form. This consent form is eligible for filing only if executed by all parties. The parties can also express their consent to jurisdiction by a magistrate judge in any joint filing, including the Joint Initial Status Report or proposed Case Management Order. (gmm, ) (Entered: 04/22/2025) |

| | | |
|---|---|---|
| 04/22/2025 | | SUMMONS - ERROR UNPROCESSED due to Summons submitted before case assigned, missing case number, and judges. Please resubmit filling out entire form with case number and judge's names. (txd, ) (Entered: 04/22/2025) |
| 04/22/2025 | 6 | SUMMONS Submitted (Court Participant) for defendant(s) Village of Oak Park, Illinois by Plaintiff Clean Energy Choice Coalition, NFP (Skoczylas, Christine) (Entered: 04/22/2025) |
| 04/22/2025 | 7 | SUMMONS Issued (Court Participant) as to Defendant Village of Oak Park, Illinois (txd, ) (Entered: 04/22/2025) |
| 04/24/2025 | 8 | MINUTE entry before the Honorable Franklin U. Valderrama: On or before 7/8/2025, the parties shall file a joint initial status report. A template for the Joint Initial Status Report, setting forth the information required, may be found at http://www.ilnd.uscourts.gov/Judges.aspx by clicking on Judge Valderrama's name and then again on the link entitled 'Joint Initial Status Report. Plaintiff must serve this Minute Entry on all other parties. If the defendant(s) has not been served with process by that date, plaintiff's counsel is instructed to file an individual status report indicating the status of service of process by the same deadline. The parties are further ordered to review all of Judge Valderrama's standing orders and the information available on his webpage. Any nongovernmental corporate party that qualifies under the Rules is reminded of the requirement to file a disclosure statement under Federal Rule of Civil Procedure 7.1/N.D. Ill. Local Rule 3.2. Mailed notice. (jcm) (Entered: 04/24/2025) |
| 04/30/2025 | 9 | SUMMONS Returned Executed by Clean Energy Choice Coalition, NFP as to Village of Oak Park, Illinois on 4/23/2025, answer due 5/14/2025. (Skoczylas, Christine) (Entered: 04/30/2025) |
| 05/12/2025 | 10 | ATTORNEY Appearance for Defendant Village of Oak Park, Illinois by Tony Salvatore Fioretti *and Certificate of Service* (Fioretti, Tony) (Entered: 05/12/2025) |
| 05/13/2025 | 11 | ATTORNEY Appearance for Plaintiff Clean Energy Choice Coalition, NFP by Kian James Hudson (Hudson, Kian) (Entered: 05/13/2025) |
| 05/13/2025 | 12 | MOTION by Defendant Village of Oak Park, Illinois for extension of time to file response/reply *Defendant's Unopposed Motion for an Extension of Time to File a Responsive Pleadings*<br><br>(Attachments: # 1 Notice of Filing Notice of Motion for Extension of time, # 2 Certificate of Service Certificate of Service)(Fioretti, Tony) (Entered: 05/13/2025) |
| 05/15/2025 | 13 | MINUTE entry before the Honorable Franklin U. Valderrama: For the reasons stated therein, the Court grants Defendant's motion for extension of time 12 . Defendant must answer or otherwise respond to the complaint by July 1, 2025. Mailed notice. (jcm) (Entered: 05/15/2025) |
| 06/20/2025 | 14 | ATTORNEY Appearance for Defendant Village of Oak Park, Illinois by Gavin Michael Kearney (Kearney, Gavin) (Entered: 06/20/2025) |
| 07/01/2025 | 15 | ATTORNEY Appearance for Defendant Village of Oak Park, Illinois by Gregory T. Smith (Smith, Gregory) (Entered: 07/01/2025) |
| 07/01/2025 | 16 | ANSWER to Complaint by Village of Oak Park, Illinois(Kearney, Gavin) (Entered: 07/01/2025) |

| | | |
|---|---|---|
| 07/03/2025 | 17 | MOTION for Leave to Appear Pro Hac Vice on behalf of Village of Oak Park, Illinois by Oberleiton R. Timothy; Filing fee $ 150, receipt number AILNDC-23708597.<br><br>(Timothy, Oberleiton) (Entered: 07/03/2025) |
| 07/03/2025 | 18 | MOTION for Leave to Appear Pro Hac Vice on behalf of Village of Oak Park, Illinois by Dror Ladin; Filing fee $ 150, receipt number AILNDC-23708969.<br><br>(Ladin, Dror) (Entered: 07/03/2025) |
| 07/03/2025 | 19 | REQUEST for Clerk of Court to refund filing fee in the amount of $150.00, receipt no. AILNDC-23708875, regarding motion to appear pro hac vice 18 (Ladin, Dror) (Entered: 07/03/2025) |
| 07/08/2025 | 20 | STATUS Report *JOINT INITIAL STATUS REPORT UNDER RULE 26(f)* by Clean Energy Choice Coalition, NFP<br><br>(Skoczylas, Christine) (Entered: 07/08/2025) |
| 07/08/2025 | 21 | ATTORNEY Appearance for Defendant Village of Oak Park, Illinois by Oberleiton R. Timothy (Timothy, Oberleiton) (Entered: 07/08/2025) |
| 07/08/2025 | 22 | REQUEST for Clerk of Court to refund filing fee in the amount of $150.00, receipt no. AILNDC-23708875, regarding motion to appear pro hac vice 17 *Amended Request for Refund (ECF No.19)* (Timothy, Oberleiton) (Entered: 07/08/2025) |
| 07/08/2025 | 23 | MINUTE entry before the Honorable Franklin U. Valderrama: The Court grants the Motions for Leave to Appear Pro Hac Vice on behalf of Village of Oak Park, Illinois by Timonthy R. Oberleiton 17 and Dror Ladin 18 . The Court refers the request to refund filing fee 19 to the Clerk's Office for resolution. Mailed notice. (jcm) (Entered: 07/08/2025) |
| 07/08/2025 | 24 | MINUTE entry before the Honorable Franklin U. Valderrama: The Court has reviewed the parties' joint initial status report 20 , in which the parties inform the Court that they agree that this case presents a purely legal question which can be resolved without fact or expert discovery. Accordingly, the Court adopts the parties' proposed dispositive motion briefing schedule: Plaintiff's Motion for Summary Judgment due 8/27/2025; Defendant's Opposition and Cross-Motion for Summary Judgment due 9/24/2025; Plaintiff's Reply in Support its Motion for Summary Judgment and Opposition to Defendant's Cross-Motion for Summary Judgment due 10/22/2025; Defendant's Reply in Support of its Cross-Motion for Summary Judgment due 11/19/2025. Mailed notice. (jcm) (Entered: 07/08/2025) |
| 07/09/2025 | 25 | REFUND PROCESSED re REQUEST for Clerk of Court to refund filing fee in the amount of $150.00, receipt no. AILNDC-23708875. (lw, ) (Entered: 07/09/2025) |
| 08/11/2025 | 26 | ATTORNEY Appearance for Defendant Village of Oak Park, Illinois by Thomas Joseph Cmar (Cmar, Thomas) (Entered: 08/11/2025) |
| 08/27/2025 | 27 | MOTION by Plaintiff Clean Energy Choice Coalition, NFP for summary judgment *pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1*<br><br>(Skoczylas, Christine) (Entered: 08/27/2025) |

| | | |
|---|---|---|
| 08/27/2025 | 28 | MEMORANDUM by Clean Energy Choice Coalition, NFP in support of motion for summary judgment 27 (Skoczylas, Christine) (Entered: 08/27/2025) |
| 08/27/2025 | 29 | RULE 56.1(b)(3)(C) Statement by Clean Energy Choice Coalition, NFP regarding motion for summary judgment 27 *Statement of Undisputed Material Facts* (Attachments: # 1 Exhibit A - Druss Declaration, # 2 Exhibit B - Durkan Declaration, # 3 Exhibit C - Cardoni Declaration, # 4 Exhibit D - Dradek Declaration, # 5 Exhibit E - Ordinance, # 6 Exhibit F - S. Rep. 100-6, # 7 Exhibit G - H.R. Rep. 100-11)(Skoczylas, Christine) (Entered: 08/27/2025) |
| 09/19/2025 | 30 | ATTORNEY Appearance for Defendant Village of Oak Park, Illinois by Dror Ladin (Ladin, Dror) (Entered: 09/19/2025) |
| 09/19/2025 | 31 | MOTION for Leave to Appear Pro Hac Vice on behalf of Village of Oak Park, Illinois by Linnet Rose Davis-Stermitz; Filing fee $ 150, receipt number AILNDC-24088472.<br><br>(Davis-Stermitz, Linnet) (Entered: 09/19/2025) |
| 09/22/2025 | 32 | MINUTE entry before the Honorable Franklin U. Valderrama: The Court grants Linnet Rose Davis-Stermitz's motion for leave to appear pro hac vice on behalf of Village of Oak Park, Illinois 31 . Mailed notice. (jcm) (Entered: 09/22/2025) |
| 09/24/2025 | 33 | ATTORNEY Appearance for Defendant Village of Oak Park, Illinois by Linnet Rose Davis-Stermitz (Davis-Stermitz, Linnet) (Entered: 09/24/2025) |
| 09/24/2025 | 34 | MOTION by Defendant Village of Oak Park, Illinois for summary judgment<br><br>(Attachments: # 1 Exhibit Statement of Facts, # 2 Exhibit Exhibits A-E)(Timothy, Oberleiton) (Entered: 09/24/2025) |
| 09/24/2025 | 35 | RESPONSE by Village of Oak Park, Illinoisin Opposition to MOTION by Plaintiff Clean Energy Choice Coalition, NFP for summary judgment *pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1*<br><br>27 (Attachments: # 1 Supplement Defendant's Response to Plaintiff's Statement of Facts)(Timothy, Oberleiton) (Entered: 09/24/2025) |
| 10/01/2025 | 36 | MOTION by Amicus Parties Sierra Club, Oak Park Climate Action Network, Chicago Environmental Justice Network, Respiratory Health Association for leave to file *Memorandum as Amici Curiae in support of Defendant's Motion for Summary Judgment*<br><br>(Amiel, Sari) (Entered: 10/01/2025) |
| 10/01/2025 | 37 | Memorandum of Amici Curiae in support of Defendant's Motion for Summary Judgment by Chicago Environmental Justice Network, Oak Park Climate Action Network, Respiratory Health Association, Sierra Club (Amiel, Sari) (Entered: 10/01/2025) |
| 10/01/2025 | 38 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Sierra Club (Amiel, Sari) (Entered: 10/01/2025) |
| 10/01/2025 | 39 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Oak Park Climate Action Network (Amiel, Sari) (Entered: 10/01/2025) |
| 10/01/2025 | 40 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Chicago Environmental Justice Network (Amiel, Sari) (Entered: 10/01/2025) |

| | | |
|---|---|---|
| 10/01/2025 | 41 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Respiratory Health Association (Amiel, Sari) (Entered: 10/01/2025) |
| 10/01/2025 | 42 | ATTORNEY Appearance for Amicus Parties Oak Park Climate Action Network, Sierra Club by Sari Amiel (Amiel, Sari) (Entered: 10/01/2025) |
| 10/01/2025 | 43 | ATTORNEY Appearance for Amicus Parties Oak Park Climate Action Network, Sierra Club by James Arlo Dennison (Dennison, James) (Entered: 10/01/2025) |
| 10/01/2025 | 44 | ATTORNEY Appearance for Amicus Parties Chicago Environmental Justice Network, Respiratory Health Association by Robert Adam Weinstock (Weinstock, Robert) (Entered: 10/01/2025) |
| 10/05/2025 | 45 | MINUTE entry before the Honorable Franklin U. Valderrama: For the reasons stated therein, the Court grants Sierra Club, Oak Park Climate Action Network, Chicago Environmental Justice Network, and Respiratory Health Association's motion for leave to file an amici curiae brief in support of Defendant's motion for summary judgment 36 . Mailed notice. (jcm) (Entered: 10/05/2025) |
| 10/22/2025 | 46 | REPLY by Plaintiff Clean Energy Choice Coalition, NFP to motion for summary judgment 34 , motion for summary judgment 27 *PLAINTIFFS COMBINED REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT* (Skoczylas, Christine) (Entered: 10/22/2025) |
| 10/22/2025 | 47 | RESPONSE by Plaintiff Clean Energy Choice Coalition, NFP *PLAINTIFFS RESPONSE TO DEFENDANTS STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDANTS CROSS MOTION FOR SUMMARY JUDGMENT* (Skoczylas, Christine) (Entered: 10/22/2025) |
| 11/19/2025 | 48 | REPLY by Defendant Village of Oak Park, Illinois to reply, 46 , motion for summary judgment 34 (Timothy, Oberleiton) (Entered: 11/19/2025) |
| 12/31/2025 | 49 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Honorable Virginia M. Kendall on 12/31/2025: Mailed notice. (tg, ) (Entered: 01/01/2026) |
| 03/06/2026 | 50 | MINUTE entry before the Honorable Franklin U. Valderrama: Currently pending before the Court are the parties' cross-motions for summary judgment 27 34 . The Court sets these motions for an in-person oral argument for Thursday, March 12 at 9:30 am. The hearing will take place in Judge Valderrama's Courtroom 1941. Mailed notice. (jcm) (Entered: 03/06/2026) |
| 03/09/2026 | 51 | MOTION by Plaintiff Clean Energy Choice Coalition, NFP to continue *March 12, 2026 Oral Argument (JOINT)* |

| | | |
|---|---|---|
| | | (Skoczylas, Christine) (Entered: 03/09/2026) |
| 03/11/2026 | 52 | MINUTE entry before the Honorable Franklin U. Valderrama: The Court is in receipt of the parties' joint motion to continue the oral argument scheduled for 3/12/2026 51 . The Court grants the parties' motion 51 and continues the hearing. The Court will follow up to set a date for the oral argument. Mailed notice. (jcm) (Entered: 03/11/2026) |
| 03/12/2026 | | (Court only) ***Deadlines and hearings Terminated. (jcm) (Entered: 03/12/2026) |
| 03/30/2026 | 53 | MOTION by Defendant Village of Oak Park, Illinois for leave to file *supplemental authority in support of Defendants' cross-motion for summary judgment*<br><br>(Attachments: # 1 Exhibit, # 2 Exhibit)(Timothy, Oberleiton) (Entered: 03/30/2026) |
| 03/31/2026 | 54 | MINUTE entry before the Honorable Franklin U. Valderrama: For the reasons stated in the motion, Defendant's motion for leave to file supplemental authority 53 is granted. Plaintiff may file a response to the motion for supplemental authority, limited to 4 pages, by 4/8/2026. Mailed notice. (jcm) (Entered: 03/31/2026) |
| 04/03/2026 | 55 | MINUTE entry before the Honorable Franklin U. Valderrama: Currently pending before the Court are the parties' cross-motions for summary judgment 27 34 . The Court sets these motions for an in-person oral argument for Tuesday, April 14 at 9:30 am. The hearing will take place in Judge Valderrama's Courtroom 1941. The Court anticipates that the hearing will last no more than one hour, and does not request argument from Amici. Mailed notice. (jcm) (Entered: 04/03/2026) |
| 04/08/2026 | 56 | RESPONSE by Plaintiff Clean Energy Choice Coalition, NFP to order on motion for leave to file,, set motion and R&R deadlines/hearings, 54 *Response to Defendant's Submission of Supplemental Authority* (Skoczylas, Christine) (Entered: 04/08/2026) |
| 04/14/2026 | 57 | MINUTE entry before the Honorable Franklin U. Valderrama: In-person hearing held on 4/14/2026 regarding the parties' cross-motions for summary judgment 27 34 . Both Plaintiff and Defendant appeared in court and presented arguments and rebuttal on their motions. The parties' cross-motions for summary judgment remain under advisement. Mailed notice. (jcm) (Entered: 04/14/2026) |
| 07/08/2026 | 58 | MOTION by Defendant Village of Oak Park, Illinois for leave to file *supplemental authority in support of Defendant's cross-motion for summary judgment*<br><br>(Attachments: # 1 Exhibit A - Proposed Supplemental Authority)(Timothy, Oberleiton) (Entered: 07/08/2026) |
| 07/09/2026 | 59 | MINUTE entry before the Honorable Franklin U. Valderrama: For the reasons stated in the motion, Defendant's motion for leave to file supplemental authority 58 is granted. Plaintiff may file a response to the motion for supplemental authority, limited to 4 pages, by 7/17/2026. Mailed notice. (jcm) (Entered: 07/09/2026) |
| 07/17/2026 | 60 | RESPONSE by Plaintiff Clean Energy Choice Coalition, NFP to order on motion for leave to file,, set motion and R&R deadlines/hearings, 59 *PLAINTIFFS RESPONSE TO DEFENDANTS SUBMISSION OF SUPPLEMENTAL AUTHORITY* (Skoczylas, Christine) (Entered: 07/17/2026) |

| | | |
|---|---|---|
| 07/20/2026 | 61 | ATTORNEY Appearance for Defendant Village of Oak Park, Illinois by Gail Lynne Reich (Reich, Gail) (Entered: 07/20/2026) |
| 07/20/2026 | 62 | MOTION by Attorney Gregory T. Smith to withdraw as attorney for Village of Oak Park, Illinois. No party information provided<br><br>(Smith, Gregory) (Entered: 07/20/2026) |
| 07/21/2026 | 63 | MINUTE entry before the Honorable Franklin U. Valderrama: For the reasons stated in the motion, the Court grants Defendant Village of Oak Park's motion to withdraw appearance of Gregory T. Smith as counsel 62 . Attorney Gregory T. Smith is withdrawn as counsel for Defendant Village of Oak Park. Mailed notice. (jcm) (Entered: 07/21/2026) |
| 07/30/2026 | 64 | MEMORANDUM OPINION AND ORDER: For the reasons stated in the accompanying order, the Court denies Plaintiff's motion for summary judgment 27 and grants Defendant's cross-motion for summary judgment 34 . Signed by the Honorable Franklin U. Valderrama on 7/30/2026. Mailed notice. (jcm) (Entered: 07/30/2026) |
| 07/30/2026 | 65 | ENTERED JUDGMENT: Mailed notice. (jcm) (Entered: 07/30/2026) |
| 08/19/2026 | 66 | NOTICE of appeal by Clean Energy Choice Coalition, NFP regarding orders 64 , 65 Filing fee $ 605, receipt number AILNDC-25551968. Receipt number: n (Skoczylas, Christine) (Entered: 08/19/2026) |
| 08/19/2026 | 67 | DOCKETING Statement by Clean Energy Choice Coalition, NFP regarding notice of appeal 66 (Skoczylas, Christine) (Entered: 08/19/2026) |
| 08/20/2026 | 68 | NOTICE of Appeal Due letter sent to counsel of record regarding notice of appeal 66 . (ph, ) (Entered: 08/20/2026) |